BORIN et al. v. CITY OF ERICK et al.

No. 30065.   April 14, 1942.

Rehearing Denied May 12, 1942.

*125 P. 2d 768.*

H. C. Ivester, of Sayre, and Donald Royse, of Elk City, for plaintiff in error C. S. Borin.

Melton, McElroy & Vaughn and S. I. McElhoes, all of Chickasha, for plaintiff in error Southwestern Light & Power Company.

Euen D. Ellis, City Atty., of Erick, and Walter G. Ellis, of Sayre, for defendants in error.

GIBSON, J. This is an action by a resident taxpayer against the city of Erick, its executive and administrative officers, and certain municipal bond dealers to restrain the sale and delivery of certain bonds issued pursuant to an alleged illegal election. The Southwestern Light & Power Company, a corporation, as intervener, seeks the same relief. Judgment was for defendants, and plaintiff and the intervener appeal.

The bonds have been approved by the Attorney General as ex-officio bond commissioner under authority of 62 O. S. 1941 §§ 11, 13, and are now about to be delivered to the defendant bond dealers pursuant to sale contracts.

It is contended that the election was illegal and the bonds consequently voidable for the reason that the ordinance proclaiming the election and the proposition submitted on the ballot did not specify the true purpose for which the money was to be used, all of which is allegedly in violation of section 16, art. 10, of the Constitution, and 11 O. S. 1941 § 61.

Under the agreed statement of facts and the exhibits therein contained, it

appears that the defendant city through its proper officers enacted an ordinance in due form calling an election pursuant to section 27, art. 10, of the Constitution, and related statutes, for the purpose of voting bonds in the sum of $60,000 in excess of the city's normal debt as limited by section 26, art. 10, of the Constitution, in order to raise funds for the construction and equipment of a municipal power plant. The question was duly submitted to the voters. The bonds carried, and were issued. Contracts for their sale were entered into, and the bonds approved by the Attorney General as aforesaid. Before their delivery to the purchasers this action was commenced.

The agreed statement of facts also contains numerous minutes of former meetings of the city council whereby it is definitely shown that the proposed bond issue was for the express purpose of raising $60,000 to supplement a grant of approximately $50,000 promised by the Public Works Administration of the Federal Government to be used for the construction of a power plant to cost in the neighborhood of $110,000. Though this purpose was not mentioned either in the ordinance calling the election or in the ballot submitted to the voters, the publicity for the election as conducted by the city officials reflected the foregoing minutes disclosing the actual purpose of constructing a $110,000 plant with the federal grant and the funds to be derived from the bonds.

The record shows that subsequent to the election the Federal Government withdrew its grant, and the defendant councilmen now propose to deliver the bonds to the purchasers and use the proceeds for the construction of a $60,-000 plant instead of one to cost $110,000 as originally contemplated.

Plaintiff says that the ordinance calling an election to enact a bonded indebtedness of $60,000 to raise funds for the erection of a power plant did not truly reflect the avowed purpose for which the money was to be used, that is, to supplement a federal grant of $50,-000 to be used in the construction of a plant to cost $110,000; that the purpose for which the money was to be used had never been to construct a $60,000 plant, notwithstanding the ordinance and the ballot may have so stated. Plaintiff insists that by reason of these facts the ordinance or law calling the election, and the measure voted by the people, were in violation of section 16, art. 10, supra, rendering the bonds either void or voidable. Said section 16 reads as follows:

"All laws authorizing the borrowing of money by and on behalf of the state, county, or other political subdivision of the state, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose."

Defendants say that since the ordinance and the ballot revealed only the purpose of raising $60,000 to construct and equip a power plant, the proceeds of the bonds may now be used for that purpose, and that the plaintiff may not go beyond the ordinance and ballot to prove a contrary purpose. They assert that plaintiff is now trying to defeat the election and annul the bonds merely by showing that certain campaign promises of members of the council and other parties reflected a purpose other than that mentioned in the ordinance and the ballot.

But plaintiff is not relying wholly on the campaign promises. He is relying principally on the public records of the council. They show plainly that the bond election was the culmination of an effort to construct a power plant partially with funds from the Federal Government. The purpose for which the money was to be used, as clearly set out in those records, was not to construct a $60,000 plant, but one to cost $110,000.

In our opinion, it cannot reasonably be said that the laws of the city, that is, the ordinance aforesaid and the proposition as voted by the people, authorizing the borrowing of the $60,000, actually specified the purpose for which the money was to be used, as contemplated by section 16, art. 10, above.

The purpose must be declared by the lawmaking body and then properly submitted to a vote of the people. If the ordinance and the ballot fail to declare the real purpose, there would be a clear violation of said section 16. O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okla. 738, 124 P. 19. The full purpose of the council, as reflected by the minutes of its meetings, was to construct a plant at a cost of $110,000, and raise $60,000 thereof by a bond issue and to pay the balance with funds to be received from the Federal Government. This purpose was not abandoned until after the election when the government withdrew its grant.

Can it be said within reason that the ordinance and the ballot, stating that the $60,000 was for the purpose of constructing the plant, actually specified the real purpose to the satisfaction of the constitutional requirement when as a matter of official record the purpose was to pay only a portion of the cost of an $110,000 plant? We think not.

The very purpose of section 16 is to require officials to reveal in the ballot the true purpose in mind. To contemplate one purpose and submit a substantially different one to the vote of the people constitutes a direct violation of said section 16. We do not say that the personal intentions of the officers will enter into the question. But their official acts will. Here the whole structure of the plan was founded on the official acts of the council looking toward the construction of a plant with financial aid from the government. On this question the people did not cast their ballots. In any event the proposition was not properly submitted and the purpose not properly disclosed. See 44 C. J. 1198, §§ 4171-4172.

In Coleman v. Frame, 26 Okla. 193, 109 P. 928, the court expressed a rule which is of some value here as a guide. It reads as follows:

"A proposition attempting to refer to the qualified property taxpaying voters of a city whether said city shall be allowed to become indebted for the purchase, construction, or repair of public utilities under section 27, art. 10, of the Constitution, must be stated in such specific language as to apprise the voters of the nature of the public utility the city wishes to purchase, construct, or repair."

And to similar effect is the holding in the Ryan Case, above, as follows:

"To obtain the authority of the qualified voters to incur an indebtedness, or to enter into a contract otherwise prohibited, the proposition must be submitted to them in such specific language as to apprise the voters of the full purpose and the exact and particular thing upon which they are called upon to vote and decide."

The case of Henson v. School District No. 92, 150 Kan. 610, 95 P. 2d 346, is very much in point. There the school board contemplated the construction of a building to cost $15,000 to be paid partially by a bond issue and the balance by a grant from the Federal Government. The ballot submitted to the voters stated the proposition as follows: "Shall the Following be Adopted: Proposition to issue bonds in the sum of Sixty-Five hundred ($6,500) for the purpose of building and equipping a schoolhouse?" In the body of the opinion the court said:

"The essential facts may be briefly stated. It was the intention of the board to erect a school building costing approximately $15,000. Of this amount $9,150 was to be advanced by the Federal Government and $5,850 provided by the district. Negotiations relative to the federal grant had been carried on but whether such grant was fully assured is immaterial to the issue here presented. In addition to the $5,850 to be provided by the district for the erection of the building itself an additional $650 was to be provided for repairing and purchasing seats, making a total for the district of $6,500. A petition was circulated and signed, and in compliance with the petition the board called an election 'upon the question of issuing the bonds of the district to the amount and for the purpose prayed for in said petition, namely, the sum of Sixty-Five Hundred Dollars, for the purpose of building and equipping a schoolhouse.' Notices were duly posted as provided in

522

the statute. . . . The question presented is whether, in view of the fact that the erection of a school building to cost $15,-000 was contemplated by the board, the posted notices and the ballot complied with G. S. 1935, 72-2002, which requires that the notices shall state 'the object for which the election was called.' "

In holding that the notice and the ballot did not sufficiently state the object for which the election was called, the court had the following to say:

"The electors are entitled to know from the notices and from the ballot just what they are voting upon. In the instant case, for instance, an elector may have heard none of the discussions which preceded the calling of the election; he may not have seen the circular with its full statement of the facts and may have had no information whatever except what he secured from the notices and the ballot. He was entitled to rely upon what the notices and the ballot said. It would not suffice to say that an elector had no interest in knowing that a building costing more than twice the amount stated in the notices was to be erected because the added cost would impose no additional burden upon the district. There might be various reasons, including the additional cost of maintenance, which would influence his vote if he had known the facts."

The judgment of the lower court refusing to enjoin the issuance of the bonds was reversed and the cause remanded, with instructions to grant the writ.

The above statements and holding of the Kansas court with reference to the statutory requirement in that state apply well to our own constitutional provision, above.

In support of their argument that one attacking a bond election may not look beyond the actual election proceedings to determine the purpose for which the money is to be used, defendants cite Reid v. City of Muskogee, 137 Okla. 44, 278 P. 339. They say that in that case the court was of the opinion that any citizen or group of citizens supporting or opposing bonds had a right to make any argument they saw fit, and that such argument, or promises, would not vitiate

an election otherwise valid, and that the court further said:

"Only when such inducements or promises inhere in the election itself, are they of any binding force upon the municipality."

But the case is not in point. Campaign promises and arguments are not alone relied on here. Official resolutions and minutes of the council leading up to and inhering in the election are relied on in this case as disclosing the purpose for which the funds were to be used.

Defendants lay some stress on the further statement in the Reid Case, as follows:

"Motives of officials and of electors are not proper subjects of judicial inquiry in an action like this so long as the means adopted for submitting the proposal to the people conformed to the requirements of the law."

But the court was there referring to personal motives, not to purposes as expressed by official action.

Other cases containing language similar to that employed in the Reid Case are cited, but they, like the Reid Case, are not controlling.

Had the council submitted to the voters the exact proposition whether bonds should issue in a specified amount to supplement the expected grant from the government to construct a plant to cost $110,000, the purpose for which the money was to be used would have been specified as provided by section 16, supra. But this was not done. And out of that omission springs this litigation.

Defendants now assert for the first time that the action is barred in that it was not commenced within 30 days from the date the Attorney General attached his certificate to the bonds as provided by 62 O. S. 1941 §§ 11, 13. Johnson v. Town Board of Trustees of Arnett, 139 Okla. 167, 281 P. 777.

The petition does not indicate in any way that the action was barred. Neither was there a contention made or proof offered that the statute had run.

We have recently held in effect that a public officer charged with the duty of defending actions against a municipality may not, by failure to appear, waive the defense of the statute of limitations where the petition on its face shows that the action is barred, and that a default judgment taken under such circumstances may be set aside for irregularity on timely motion. Nordman v. School District No. 43, 190 Okla. 135, 121 P. 2d 290. But we have never held that a municipality in defense of an action wherein the pleadings do not disclose the bar may properly assert the statute and seek to take advantage thereof on appeal where the same was not pleaded and proved at the trial.

We cannot sustain the judgment on the ground that the action was barred. That question was not before the trial court. So far as that court knew, and so far as we know, the action was not barred.

The bonds in this case have not come into the hands of purchasers for value. Therefore, we are not called upon to determine the rights of such parties. It is sufficient to say that the bonds are at least voidable, and their sale and delivery may be enjoined.

The judgment is reversed and the cause remanded, with directions to grant the writ.

RILEY, OSBORN, BAYLESS, and DAVISON, JJ., concur. WELCH, C. J., CORN, V. C. J., and HURST and ARNOLD, JJ., dissent.