Tom QUINN, Appellant,

v.

CITY OF TULSA, Oklahoma, A municipal corporation, Appellee.

No. 71801.

Supreme Court of Oklahoma.

July 18, 1989.

certain additional bonded indebtedness should be incurred.

The Resolution set out the ballot titles for the proposed bond election in eight propositions and was approved and enacted with an emergency clause which gave it immediate force and effect. Thereafter, on September 22, 1987, Ordinance No. 16900 was adopted by the City which authorized and directed the calling and holding of the special election. This ordinance set forth the propositions to be voted on and each specific project which was to be funded with revenue from the sale of the proposed bond issue.[1]

On that same date a Special Election Proclamation and Notice was executed by the Mayor which set the date of the special election on October 6, 1987. The election was held and seven of the eight propositions on the ballot were approved by the voters.

On November 4, 1987, appellant filed his petition against City, the Metropolitan Tulsa Chamber of Commerce, and the Vote "Yes" for Tulsa Committee, which petition alleged that City, by and through its agents, employees and servants, had committed illegal and improper acts in the conduct of the election. Specifically, appellant alleged City had in one form or another expended public money in an effort to promote passage of the tax and bond issues, had made misrepresentations to the public and had engaged in improper procedures in promulgating the above-mentioned Resolution, Ordinance and Ballot.

Appellant contended that the acts of City had resulted in an illegal tax which should be enjoined. He further petitioned the trial court to issue its injunction to prohibit City officials from engaging in any similar activities during future bond elections.

Further, appellant alleges the trial court erred in issuing a certain protective order during the course of discovery, which order limited his access to information on the campaign in the hands of the Metropolitan Tulsa Chamber of Commerce.

Robert A. Todd, Tulsa, for appellant.

Niel E. McNeill, City Atty., Alan L. Jackere, Asst. City Atty., Tulsa, for appellee.

DOOLIN, Justice.

On August 20, 1987, the Mayor and Board of Commissioners of appellee, City of Tulsa (City) adopted a Resolution of Notice of Special Election, pursuant to 26 O.S.1986 Supp. § 13–102, notifying the election boards in Tulsa, Rogers and Osage counties of a special election to be held on October 6, 1987, for the purpose of submitting to the voters of Tulsa the questions of whether a certain temporary one-percent sales tax should be extended and whether

1. 62 O.S.1981, § 574.

Following trial to the court, judgment was entered in which it was found that the form and content of the ballots were sufficient, that City officials did not act improperly in individually supporting the bond proposals, and that there was insufficient evidence of fraud or coercion on the part of elected officials or employees during the campaign. The court did find that City officials had acted improperly in allowing or authorizing the expenditure of public funds in support of the bond proposal, but it held that injunctive relief to restrain the issuance and sale of the bonds would not lie to redress those improper acts. The court further declined to enjoin future acts by the City.

From this judgment appellant appeals and on appeal he asserts the following propositions of error:

## I.

In his first proposition of error, supplied by an Amended Petition in Error, Appellant argues that the procedures by which the City authorized the election on the contested bonds are totally defective because they did not comply with the time limits prescribed in Title 4, Section 37 of the Revised Ordinances of the City of Tulsa. That ordinance says:

"No ordinance or resolution of the City of Tulsa shall become operative until thirty (30) days after its passage and approval by the Mayor, and if an ordinance is passed over his veto, such ordinance shall not take effect and become operative until thirty (30) days after such final passage, except measures necessary for the immediate preservation of peace, health, or safety; and no such emergency measure shall become immediately operative unless it shall state, in a separate section, the reasons why it is necessary that it should become immediately operative, and the question of emergency shall be ruled upon separately and approved by the affirmative vote

**2.** 22 Okl. 265, 100 P. 559, 576 (1908).

of three-fourths of all the members elected to the Board of Commissioners taken by ayes and noes and the whole measure be approved by the Mayor or passed over his veto."

 While Appellant does not allege the bond ordinance fails to facially comply with this section, he says it does not comply in fact because there was no genuine emergency which affected the peace, health or safety of the City of Tulsa. He says its designation as an emergency was mere ploy by the Board of Commissioners and the Mayor to provide immediate effect and so to gain some unspecified advantage in the election.

We note that this proposition of error concerns an argument which was only barely raised during proceedings before the trial court. While some testimony was elicited about the enactment of the ordinance as an emergency and the motives of the City Commissioners, appellant did not argue this precise legal point in the trial court.

Inasmuch as there was some testimony, however abbreviated and unremarked-on, from which the trial judge could have perceived the issue, and because the matter was brought before this Court in the Amended Petition in Error, we cannot say the issue does not merit resolution.

In every instance where this Court has been called upon to examine the correctness or foundation of an emergency clause in legislation, we have always declined to go behind the decision of the legislative body. As we said in *Oklahoma City v. Shields:*[2]

We conclude that the judgment of the Legislature in determining whether or not an emergency existed—that is, whether or not a measure is immediately necessary for the preservation of the public peace, health, or safety—*rests solely with the Legislature. It is not subject to review by the courts,* or any other authority except the people. [emphasis added].

This holding was subsequently applied to the enactment of city ordinances in *In re Referendum Petition in Ponca City Concerning Ordinance Number 4478*,[3] when this Court held that the determination of the existance of an emergency, in ordinances as well as statutes, is exclusively a legislative function and is conclusive in judicial proceedings where its inclusion is not proscribed. Because appellant has shown no authority to the effect that an emergency clause is proscribed from inclusion in the type of ordinance here under challenge, we find such clause to be presumptively correct and binding.

Therefore, we find appellant's first proposition of error insufficient to disturb the ruling of the trial court.

## II.

In his second proposition of error, appellant argues that the trial court erred in not enjoining the issuance of that portion of the bonds which were approved by the voters under Ballot Proposition No. 4.[4] That proposition's ballot title, appellant contends, failed to meet the requirement of Article 10, Section 16, of the Oklahoma Constitution, which says:

All laws authorizing the borrowing of money by and on behalf of the State, County or other political subdivision of the State, shall specify the purpose for which the money is to be used, and the money so borrowed shall be used for no other purpose.

Appellant says the ballot title of Proposition Four violated this section because while the proposition asked the voters to approve some $16.1 million for work on the City's sewage system, the City's plans called for projects with a total cost of about $60 million. Therefore, he argues, the purpose of the $16.1 million approved by the voters was to begin projects which could be completed only by subsequent government grants, borrowing or new bonds supported by new taxes. Appellant believes that because these other sources of funds were not spelled out, the proposition did not state the purpose of the indebtedness.

 In support of his position, appellant cites *Borin v. City of Erick*.[5] There, as here, a taxpayer brought suit to enjoin the sale of bonds which had been issued pursuant to an allegedly illegal election. The City Council of Erick officially proposed to build a power plant to be financed with $50,000 in the form of a grant from the federal Public Works Administration, supplemented by $60,000 from a bond issue. In contemplation of the construction of a $110,000 facility the bond issue was approved. Thereafter the PWA grant was withdrawn and the council decided to pro-

---

3. 530 P.2d 120–121 (Okl.1974).

4. Ballot Proposition No. 4 about which appellant complains is set out in part as follows: "SHALL THE CITY OF TULSA, OKLAHOMA INCUR AN INDEBTEDNESS BY ISSUING ITS BONDS IN THE SUM OF SIXTEEN MILLION ONE HUNDRED THOUSAND DOLLARS ($16,-100,000.00) TO PROVIDE FUNDS EITHER WITH OR WITHOUT STATE OR FEDERAL AID FOR THE PURPOSE OF CONSTRUCTING, ENLARGING AND EQUIPPING SEWAGE DISPOSAL AND TREATMENT PLANTS AND FACILITIES, EXTENDING, RECONSTRUCTING, RELOCATING, IMPROVING AND ENLARGING THE PRESENT PUBLIC SANITARY SEWERS AND SEWAGE DISPOSAL SYSTEMS AND ACQUIRING NECESSARY LANDS, MACHINERY AND EQUIPMENT THEREFOR ALL TO BE OWNED EXCLUSIVELY BY SAID CITY, WITHIN OR WITHOUT THE CORPORATE LIMIT, AS

AUTHORIZED BY SECTION 27, ARTICLE X OF THE CONSTITUTION AND STATUTES OF THE STATE OF OKLAHOMA, AND ACTS COMPLEMENTARY (SIC), SUPPLEMENTARY AND ENACTED PURSUANT THERETO; AND LEVY AND COLLECT AN ANNUAL TAX, IN ADDITION TO ALL OTHER TAXES, UPON ALL TAXABLE PROPERTY IN SAID CITY, SUFFICIENT TO PAY THE INTEREST ON SAID BONDS, AS IT FALLS DUE, AND ALSO TO CONSTITUTE A SINKING FUND FOR THE PAYMENT OF PRINCIPAL THEREOF WHEN DUE, SAID BONDS TO BEAR INTEREST OF NOT MORE THAN THE MAXIMUM RATE PERMITTED BY LAW AT THE TIME THE BONDS ARE ISSUED, PAYABLE SEMIANNUALLY AND TO BECOME DUE SERIALLY WITHIN TWENTY-FIVE (25) YEARS FROM THEIR DATE?"

5. 190 Okl. 519, 125 P.2d 768 (1942).

ceed with the bond money to build a lesser facility with lesser capabilities.

The Court held the sale and delivery of the bonds should be enjoined saying:

> The very purpose of section 16 is to require officials to reveal in the ballot the true purpose in mind. To contemplate one purpose and submit a substantially different one to the vote of the people constitutes a direct violation of said section 16. We do not say that the personal intentions of the officers will enter into the question. But their official acts will. Here the whole structure of the plan was founded on the official acts of the council looking toward the construction of a plant with financial aid from the Government. On this question the people did not cast their ballots. In any event the proposition was not properly submitted and the purpose not properly disclosed. [citations omitted] [6]

It is clear from this ruling that a municipality may not officially plan a specific project at a specified cost and then use bond proceeds which were voted in contemplation of that project for another one which is substantially different. In *Borin* it was clear that the City of Erick intended, as evidenced from the official acts of its council members, to build one kind of power plant with the help of the PWA. That was the project which was approved by the voters. The Court found the voters had never been given the opportunity to vote on the issue of whether or not they wanted the lesser power plant and therefore the sale of bonds for that substantially different project was unlawful.

■ The situation in *Borin* was distinguished in the subsequent decision of the Court in *City of Sallisaw v. Nesbitt.*[7] In that case the bond election was contested because the ballot title in a proposition for the approval of bonds to be expended on public utilities did not state that the City of Sallisaw hoped to obtain federal grants to supplement revenue from the sale of the bonds.

The Court there held in favor of the issuance and sale of the bonds and said that the anticipation of supplementing bond revenue with federal funds did not have to be mentioned in the ballot title so long as the taxpayers would not incur an indebtedness other than the one on which they voted.[8] On rehearing, the Court specifically distinguished the decision in *Borin* by noting that in *Borin* the *official acts* which led up to the election were clearly predicated on the receipt of federal funds and the non-receipt of these funds substantially changed the nature of the project the voters had approved. In *City of Sallisaw*, on the other hand, the anticipated federal money was not a necessity for the completion of the proposed project and, more importantly, the federal grant had not failed to materialize so as to substantially change the nature of the projects voted on.

The rule, therefore, in *City of Sallisaw* remains that the failure to reveal in the ballot title each and every anticipated source of additional funding will not render the proposition defective under Article 10, Section 16 of the Oklahoma Constitution, especially when the anticipation of that additional funding was not clearly a basis for the official acts leading up to the bond election. That case, and its rule, seem to relate most clearly to the issue now before us.

■ In response to appellant's arguments, City here emphasizes its compliance with the Bond Issue Proceeds Act, at 62 O.S.1981, § 574, which says, in pertinent part:

> A. At any election upon the question of issuing bonds, which if approved would require an ad valorem tax levy or pledging the full faith and credit of the State of Oklahoma, the governmental en-

---

6. *Borin, supra,* 125 P.2d at 770.

7. 380 P.2d 954 (Okl.1963).

8. Id., at 956.

tity calling such election *shall set forth in each proposition to be voted upon the general purpose for which the bond proceeds will be expended. This shall not require the proposition or the bond to recite specific projects and dollar amounts.*

B. At any election upon the question of issuing bonds, which if approved would require an ad valorem tax levy or pledging the full faith and credit of the State of Oklahoma, the governmental entity calling such election *shall set forth in the call of election,* in a legally qualified newspaper of general circulation in the area wherein said bond issue proceeds are to be expended, *a general statement of all purposes and specific projects for which seventy percent (70%) of the proceeds shall be expended on each specific project. The dollar figure left unlisted as to specific projects shall not exceed thirty percent (30%) of the total amount of the bond issue.* [emphasis added].

The record in this case shows that every official act of the City Commissioners, whether in public statements, or in the ordinance, resolution and official notice, referred to the expenditure only of $16.1 million for the purposes which were clearly and substantially put before the voters according to the requirements of Section 574.

Appellant points to the testimony of the Director of the City of Tulsa Water and Sewer Department, elicited at trial, wherein the Director opined that the $16.1 million would be insufficient to complete the projects listed in the ordinance. The Director expressed his hope that additional funding would be acquired from other sources, including state and federal loans. Significantly, the Director provided undisputed testimony that all funds raised under Proposition Four would be used on the projects as designated.

The essence of appellant's arguments in this proposition of error is that the wording of Proposition Four and of the resolution and ordinance underlying it did not reveal that additional funds would be needed to complete the projects listed. It is clear that this assignment of error must fail in light of the rule of *City of Sallisaw,* supra.

The mere omission from the ballot title of the fact that additional funding is anticipated, without more, does not make the question so deceptive or misleading as to deprive the voters of the opportunity to fairly express their will, nor does such omission make the question so indefinite that the voters will not understand with substantial accuracy what they are being asked to approve.[9]

We find, therefore, that the language associated with Proposition Four of the contested bond election substantially complies with the constitutional and statutory requirements.

### III.

In his Propositions Three and Four, appellant continues to argue the premise that the projects to be funded by Proposition Four would, at some time in the future, require the expenditure of more than $60 million instead of the $16.1 million which was stated in the call of election and the ballot title. Appellant relies on 62 O.S. 1981, § 574 B. *supra,* for support of his proposition that the call of election and ballot title are defective because they do not list the total amount of money which might be expended on the total sewer renovation program envisioned by the Director of the Sewer and Water Department.

The plain language of § 574 says the call of election, as published, must contain a general statement of all purposes and specific projects for which seventy percent (70%) of the *proceeds* of the bonds shall be expended. Nowhere is it alleged that Proposition Four fails to comply with this statute insofar as it describes the expenditure of the actual proceeds of the bond issue. Appellant's only allegation of a deficiency

9. See, *Arthur v. City of Stillwater,* 611 P.2d 637, 653 (Okl.1980).

is that the call of election and ballot title do not reflect other anticipated expenditures of funds which might be obtained from sources outside the bond issue in question.

Appellant's objection and arguments in this regard are clearly controlled by the rule of *City of Sallisaw*, supra.

### IV.

Appellant alleges error in the trial court's ruling that official misconduct on the part of City, even though it occurred, did not constitute grounds to enjoin the sale of the bonds in question.

Appellant argues that City improperly used public money to support passage of the bond issue in the following particulars: 1) City money was used to pay for a survey of voter attitudes during the planning stages for the bond election, 2) City employees were asked, during working hours to perform functions in support of the campaign for passage of the bond issue, 3) the City Development Department expended public money and used public employees to compile a campaign strategy manual, 4) City, through proxies, paid for newspaper ads which were generally favorable to the bond issue, 5) the Mayor used his office stationary and employees to mail letters soliciting support for passage of the bond issue, 6) City employees were used to form a committee for the purpose of campaigning for passage of the bond issue, and that several City employees participated in this Committee's activities while on tax-supported work time, 7) the Mayor and City Commissioners were vocal in their support of the bond issue and neglected other City business to work for its passage, 8) City employees were called to meetings during working hours where they were urged to vote for the bond issue, 9) memoranda and other communications supporting the issue were prepared and distributed during working hours by City employees at City expense, and, 10) City allowed campaign signs in support of the issue to be placed on public property. Appellant's argument

that the enumerated particulars set out in the paragraph preceding have invalidated the bond election results is not well-taken. See, *Hembree v. City of Stilwell*, 597 P.2d 1218, 1220 (Okl.1979), holding:

> When failure to meet statutory formalities is invoked after the balloting takes place, the results of an election will not be invalidated absent proof of fraud or corruption so pervasive as to taint the entire process.

We are not unmindful that the Stilwell case arose from an election of a councilman and dealt with a question as to statutory requirements. Such statutory requirements as calling for an election, preparing a city ward map and other preliminary requirements were not followed. Nonetheless, the thrust of the Stilwell holding requiring a showing of fraud or corruption before the result of an election is spoiled or tainted has application in the instant case.

After presentation and argument of these alleged wrongful activities at trial, the trial court concluded that there had been some impermissible expenditure of public funds to influence passage of the bond issue, which was characterized as a violation of principles of fundamental fairness and of the democratic process. After reaching this conclusion, the court held that even though there had been some improper activities the evidence did not establish that the electoral process had been contaminated by these activities to such an extent as would justify the invalidation of the election.

Appellant does not, of course, dispute the trial court's finding of improprieties. He does, however, claim error in the trial court's decision not to enjoin issuance and sale of the bonds.

The statutory bases for Appellant's attack on the issuance of the bonds are found in 26 O.S.1981, § 16–119, and 12 O.S.1981, § 1397. The former statute says:

> Any official in this state who shall direct or authorize the expenditure of any public funds under his care, except

as specifically authorized by law, to be used either in support of, or in opposition to, any measure which is being referred to a vote of the people by means of the initiative or referendum, or which citizens of this state are attempting to have referred to a vote of the people by the initiative or referendum, shall be deemed guilty of a misdemeanor, and the office held by such party shall be adjudged vacant and shall be filled in the manner prescribed by law.

The other statute simply invests the district courts with the power to enjoin the levy or collection of an illegal tax.

The first issue for this court to decide is whether there was a violation by City officials of 26 O.S.1981, § 16–119.

To reach this issue we must first address the specific wording and provisions of § 16–119. The statute, by its own terms, forbids expenditure of public funds to influence the vote in any measure which is being referred, or which is sought to be referred to a vote of the people by means of initiative or referendum. The initial hurdle to the applicability of the statute here is whether a bond election constitutes a referral to a vote by means of the initiative or referendum process.

■ The powers to enact legislation by initiative and referendum are reserved to the people of Oklahoma by Article 5, §§ 1 and 2 of the Oklahoma Constitution. These powers are specifically extended to the people of every municipal corporation in the state by the terms of Article 18, § 4. The reserved powers of initiative and referendum guaranteed under Art. 18, § 4 refer to municipal legislation or general laws only; that is, rules of civil conduct of general application throughout the municipality as prescribed by the lawmaking power of such municipality.[10] While the precise issue has not heretofore been decided by this Court, it is clear from the intent of the framers of our Constitution and from other authorities that bond issues and matters of revenue and taxation *may* be proper subjects for the exercise of initiative and referendum.[11] This is not to say, however, that every bond election is a matter subject to the rules of initiative and referendum.

■ The election held by the City clearly was not one conducted according to the statutes on initiative and referendum for municipal questions.[12] No petition for the calling of an election was circulated and signed by the voters within the municipality.[13] This then was not an election wherein a measure was, "being referred to a vote of the people by means of the initiative or referendum," as that phrase is used in 26 O.S.1981, § 16–119, *supra.*

■ Section 16–119 is a penal law, that is, a statute which imposes a penalty and punishment for an offense of a public nature, and because it is also punishable as a misdemeanor it is therefore a criminal law as well.[14] Penal statutes are to be strictly construed and any cause of action based upon such a statute must be clear and without doubt.[15] Likewise, criminal statutes are to be strictly construed and a person cannot be convicted of a crime unless the act which is committed is within

---

**10.** *In re Supreme Court Adjudication of Sufficiency of Initiative Petition in Tulsa, Oklahoma, Concerning a One–Cent Sales Tax Increase for Funding Additional Police Personnel and Compensation,* 597 P.2d 1208, 1211 (Okl.1979).

**11.** See Vol. 5, *McQuillian, Municipal Corporations,* § 16.57, p. 259, 3d Ed. 1949.

**12.** 11 O.S.1981, § 15–101, et seq.

**13.** 11 O.S.1981, § 15–103.

**14.** *Smith v. Colson,* 31 Okl. 703, 123 P. 149, 151 (1912) and 26 O.S.1981, § 16–110; which provides:

Any Person deemed guilty of a misdemeanor under provisions of this act shall, upon conviction, be confined to the county jail for not more than one (1) year, or fined not more than One Thousand Dollars ($1,000.00) or both.
and see: Op. Atty. Gen 79–346 (Nov. 28, 1979).

**15.** *State ex rel. White v. Beeler,* 327 P.2d 664, 668 (Okl.1958).

both the letter and the spirit of the statute.[16]

■ Given the foregoing rules we must conclude that the provisions of § 16–119 are applicable only to an official who unlawfully directs or authorizes the expenditure of public funds to influence the outcome of a measure which is being referred to the voters by means of initiative or referendum. The bond election in Tulsa was not by the process of initiative or referendum and the penalties of this statute do not apply.

The second statutory ground for appellant's attack on the bond election is found in 12 O.S.1981, § 1397, which says in pertinent part:

> An injunction may be granted to enjoin the enforcement of a void judgment, the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same; and any number of persons whose property is affected by a tax or assessment so levied may unite in the petition filed to obtain such injunction.

\* \* \* \* \* \*

Appellant contends that the improprieties of City officials during the election campaign tainted the election results to such an extent that the tax approved thereby is illegal and should be enjoined from levy or collection. To support his contention appellant mistakenly relies on the New York case of *Stern v. Kramarsky.*[17] That case held that injunction is a proper remedy to stop or prevent public officials from *campaigning* to achieve passage of a measure on the ballot. The rule is clearly inapplicable here because the election is completed and the City is no longer conducting such a campaign. Here, the issue is whether the tax approved in the disputed election is an illegal tax and whether the levy and collection of that tax can be enjoined by the district court.

In the case of *Payne v. Jones,*[18] this Court held:

> We are committed to the rule that a resident taxpayer, although he shows no special or private interest, may maintain an action to enjoin the illegal creation of a public debt or the illegal expenditure of public funds. Under this rule, which has been many times followed by this court, Jones would be entitled to injunctive relief to prevent an illegal expenditure of public funds or the illegal creation of a public debt *if his proof were sufficient to establish a case.* [citations omitted; emphasis added].

So, then, the propriety of an injunction under 12 O.S.1981, § 1397, is one of sufficiency of the evidence.

■ The issue then becomes a determination of whether appellant's proof of official misconduct was sufficient to support the requested injunction and to, in effect, void the election. In resolving this issue we must adhere to the rule that courts must, whenever possible uphold the validity of bond elections.[19]

Further, it has always been the practice of this Court to approve bond elections and bond issues where the purpose was a legitimate municipal function; where that purpose was plainly stated in the election proclamation and where the legal formalities have been observed. Extraneous evidence has not been allowed to overcome the purpose expressed in the formal proceedings.[20] In the instant case there is no challenge by appellant to any of the *official* proceed-

**16.** See: *Modisett v. Marmaduke,* 394 P.2d 541, 544 (Okl.Cr.1964).

**17.** 84 Misc.2d 447, 375 N.Y.S.2d 235 (1975).

**18.** 193 Okl. 609, 146 P.2d 113, 117 (1944); see also, *Beauchamp v. Oklahoma City,* 477 P.2d 51, 55 (Okl.1970).

**19.** *City of Tulsa v. Williamson,* 276 P.2d 209, 216 (Okl.1954).

**20.** *Johnson v. City of Muskogee,* 194 Okl. 513, 153 P.2d 118, 119 (1944).

ings, other than his argument as to the propriety of the emergency clause, discussed hereinabove.

■ The burden of proof in an action to enjoin the issuance and sale of municipal bonds due to alleged irregularities during the election is upon the party seeking the injunction. This burden is substantially met upon proof by the party seeking injunction that the irregularities complained of changed the result of the election.[21]

■ While appellant did show substantial *effort* by the City to sway the voters, he has failed to show any evidence that the effort succeeded or that the outcome of the election would have been different had that effort not been made.

We refuse to accept appellant's assumption that the voters of Tulsa are sheep who can be easily misled and manipulated by advertising campaigns and speeches.

The power of the people to speak through their ballots is sacrosanct. No court should be permitted to declare an election void nor to enjoin the result mandated by that election unless a contestant can prove conclusively, by clear and convincing evidence that the result of that election would have been substantially different but for the unlawful acts of public officials. A contestant meets this burden of proof by showing that a significant number of voters would have cast their vote differently if they had not been subject to the influence of improper and unlawful campaign tactics by government officials.

Without that kind and degree of proof no court can determine with the requisite degree of certainty that an election was so tainted as to require its vacation.

## V.

■ In his eighth proposition of error, appellant alleges the trial court erred in failing to enjoin City officials from acting improperly in future bond elections, but appellant cites no authority to support this allegation of error. In its judgment the trial court found, based upon the evidence, "it cannot be presumed that they (City officials) will act illegally or fraudently in regard to any upcoming election campaign."

The long-standing rule in Oklahoma was succinctly stated in *Amoco Production Co. v. Lindley,*[22] where we said:

Granting or refusing an injunction rests to some extent within the sound discretion of the trial court and its judgment will not be disturbed on appeal unless it can be said the court abused its discretion or that the judgment rendered is clearly against the weight of the evidence

* * * and * *

Injunction is an extraordinary remedy, and relief by that means is not to be lightly granted and the discretion of the court must be exercised within sound equitable principles, taking in all the facts and circumstances of the case.

To determine the propriety of the trial court's refusal of an injunction this Court has examined the evidence presented below.[23] From this review we find appellant's expectation of future wrongdoing to be too speculative to form the basis for an injunction at the present.

## VI.

Finally, appellant alleges error in the ruling by the trial court which denied him discovery of all records of the Metropolitan Tulsa Chamber of Commerce which dealt with donations, expenditures or strategy of the City, the "Vote Yes" Committee and/or the Chamber of Commerce regarding the campaign for passage of the bond issue in question.

Appellant issued a subpoena duces tecum to the president of the Chamber which in-

---

**21.** See: *Moore v. City of Page,* 148 Ariz. 151, 713 P.2d 813, 826–27 (App.1986).

**22.** 609 P.2d 733, 745 (Okl.1980).

**23.** *Board of Regents v. National Collegiate Athletic Ass'n.,* 561 P.2d 499, 502 (Okl.1977).

structed him to appear for a deposition with the requested records. Upon objection to the trial court by the president and application for a protective order, and at appellant's request, a hearing was held wherein the trial court determined the protective order should issue. As grounds the court said the information as to campaign contributions and expenditures was not relevant on the question of whether the sale of the bonds should be enjoined.

The record further reflects that the Chamber and its president were initially named as defendants but were dismissed on their own motions, which dismissal was not appealed. The president of the Chamber appeared at trial and was examined by appellant's counsel as to all matters attempted to be discovered except for records as to the dollar amounts of contributions and the names of the contributors to the "Vote Yes" campaign.

■■■■ Appellant relies upon 12 O.S. 1982 Supp. § 3203.B.1., which permits broad discovery of any materials which are not privileged and which are relevant to a pending action. We take this opportunity to define the scope and application of this section of the Discovery Code by adopting the comments of the United States Supreme Court in *Herbert v. Lando*,[24] in which the Court said:

> The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials. But the discovery provisions, like all of the Federal Rules of Civil Procedure are subject to the injunction of Rule 1 [25] that they "be construed to secure the **just, speedy,** and **inexpensive** determination of every action." **[emphasis added.]** To this end, the requirement of Rule 26(B)(i) [26] that the material sought in dis-

covery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Rule 26(c).[27] With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process. [citations omitted].

With this guidance, our task is to review the record to determine if the trial court abused its discretion in this regard.

■■■■ Appellant's stated reason for seeking information as to the Chamber's receipt and expenditure of funds was to establish whether public funds were spent on the campaign by the City. Specifically, counsel for appellant stated during trial that his goal was to establish a basis for the injunction discussed hereinabove as to the future acts of City officials. It is clear from the record that while the trial court recognized the relevance of how the City may have expended its funds in the campaign, there was no relevance to the issue of how the Chamber spent its own money.

Inasmuch as the City's Deputy City Auditor was called and examined as to City expenditures, any information that might have been obtained from the Chamber through the requested discovery appears, at best, redundant. We therefore find no error in the trial court's ruling.

## CONCLUSION

While appellant did succeed in proving that officials of City had in fact improperly expended some public funds in support of the passage of the bond issue in question, he did not meet his burden of showing that the official acts of City in its Resolution, Ordinance or Ballot, were such that they

**24.** 441 U.S. 153, 177, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1979).

**25.** 12 O.S.1982 Supp., § 3202.

**26.** 12 O.S.1982 Supp., § 3203.B.1.

**27.** 12 O.S.1982 Supp., § 3203.C.

**1343**

effectively deprived the voters of Tulsa of an adequate understanding of the ballot issues nor that the language of the Ordinance or Ballot failed to live up to the requirements of the Oklahoma Constitution. Most important, appellant has not shown that the result of the election would have been different but for the acts complained of.

The judgment of the trial court is AFFIRMED.

HARGRAVE, C.J., and HODGES, SIMMS, ALMA WILSON and SUMMERS, JJ., concur.

LAVENDER, J., concurs in result.

OPALA, V.C.J., and KAUGER, J., concur in part; dissent in part.