Question Submitted by: The Honorable Anastasia A. Pittman, State Senator, District 48
2017 OK AG 1
Decided: 04/17/2017
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 1, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
Does an elective governing body of a city or municipality violate 26 O.S.2011, § 16-119 by passing a resolution that supports or opposes a State Question which has been referred to a vote of the people?
I.
Introduction
¶1 Your question is premised on the application of a penal statute, 26 O.S.2011, § 16-119, prohibiting any official within the State from using public funds to advocate a specific election result on pending state questions. That statute provides:

Any official in this state who shall direct or authorize the expenditure of any public funds under his care, except as specifically authorized by law, to be used either in support of, or in opposition to, any measure which is being referred to a vote of the people by means of the initiative or referendum, or which citizens of this state are attempting to have referred to a vote of the people by the initiative or referendum, shall be deemed guilty of a misdemeanor, and the office held by such party shall be adjudged vacant and shall be filled in the manner prescribed by law.

Id. Thus, in order to violate Section 16-119, an act must satisfy four elements: (1) It must be the act of an official in the State; (2) The act must direct or authorize the expenditure of public funds under the care of the official; (3) The expenditure must be used in support of or in opposition to a measure; and (4) The measure must be subject to a vote of the people by initiative or referendum, or be subject to efforts to be put to such a vote. Whether a city or municipal official's act in voting for a resolution supporting or opposing a State Question meets these elements is examined below.

II.
Discussion
¶2 Statutes must be interpreted according to their text, and when the text is clear, no further inquiry into legislative intent is permitted unless a particular application will lead to absurd results. See State v. Young, 1999 OK CR 14, ¶ 27, 989 P.2d 949, 955; Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 13, 33 P.3d 302, 307. Because Section 16-119 is a penal statute carrying criminal consequences, any ambiguity in the statute must be strictly construed in favor of the accused and only interpreted to criminalize conduct when clear and without doubt. See State v. Duc Hong Pham Tran, 2007 OK CR 39, ¶ 8, 172 P.3d 199, 200; Quinn v. City of Tulsa, 1989 OK 112, ¶ 44, 777 P.2d 1331, 1339-40. "This venerable rule . . . vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." United States v. Santos, 553 U.S. 507, 514 (2008) (plurality opinion).
¶3 With these principles in mind, this Opinion concludes that an official's decision to vote for a city or municipal resolution as described in your Question would not violate Section 16-119. Although such an act is one by an official within the State with respect to a referendum (see Section A), an official's act of voting for such a resolution would not constitute the directing or authorizing of public funds to be used in support of or opposition to an initiative or referendum (see Section B).

A. A council member's vote for a city or municipal resolution constitutes an act of "any official in this State" and a measure placed on the ballot either by the Legislature or by citizen petition constitutes an "initiative or referendum" for purposes of Section 16-119.

¶4 The first and last elements of Section 16-119 are met in the passage of a resolution by the governing body of a city or municipality expressing support or opposition to a State Question.
¶5 Under the first element, Section 16-119 applies to "any official in this state." It has long been understood that this provision applies to "public officials." See A.G. Opin. 96-23 ("Under a strict construction of Section 16-119, a public official is in violation of this statute . . . .") (emphasis added); A.G. Opin. 79-346 ("The aforesaid statute clearly states that a public official is expressly prohibited from directing or authorizing the expenditure of public funds under his care to influence any measure . . . .") (emphasis added). Attorney General Opinions 80-241 and 80-249 specifically concluded that the "[m]embers of a City Commission constitute officials" for purposes of Section 16-119.[1] 
¶6 Moreover, when the governing body of a city or municipality passes a resolution, it does so through the acts (i.e., votes) of individual members of the body, who "direct or authorize" the action for the purposes of Section 16-119. In sum, when a city or municipality passes a resolution, those members of the governing body voting for the resolution have engaged in an action as an "official in the State" that is subject to the limitations of Section 16-119.
¶7 Under the last element of Section 16-119, the statute applies only to acts with respect to measures "referred to a vote of the people by means of the initiative or referendum." The terms "initiative" and "referendum" are legal terms that are used throughout the Oklahoma Constitution, statutes, and case law. For example, Article V, Section 2 of the Oklahoma Constitution protects the right of the people to propose legislative measures and constitutional amendments by "initiative," and protects the right of the people to vote on a "referendum" when placed on the ballot by citizen petition or by an act of the Legislature. These powers were "extended to the people of every municipal corporation in the state by the terms of" Article XVIII, Section 4 of the Oklahoma Constitution, Quinn, 1989 OK 112, ¶ 42, 777 P.2d at 1339, as well as to counties and districts under Article V, Section 5, see A.G. Opin. 80-310, at 517. 
¶8 Meanwhile, the procedures for initiatives and referenda, including for constitutional amendments under Article XXIV of the Constitution, have been established by the Legislature in Sections 1-12 of Title 34 of the Oklahoma Statutes. It is pursuant to these procedures that State Questions- as referenced by your opinion request--are placed on the ballot. And the Oklahoma Supreme Court has referred to these proposed statutory or constitutional changes as "initiative petitions" when proposed by the citizenry, and "legislative referendums" when proposed by the Legislature. See, e.g., Save the Illinois River, Inc. v. State, 2016 OK 86, ¶¶ 5-7, 378 P.3d 1220, 1222. Thus, at a minimum, the measures identified at Sections 2 and 5 of Article V, Section 4 of Article XVIII, and Section 1 of Article XXIV of the Constitution, which are subject to the procedures provided for by statute, are within the purview of Section 16-119's prohibitions, whether proposed by citizens or the Legislature.[2] 

¶9 Accordingly, the first and last elements of Section 16-119 are met by the circumstances proposed by your Question. Specifically, a member of a city or municipal governing body is acting as an "official in this state" when voting on a resolution, and if the resolution concerns a State Question that is subject to a ballot referendum or initiative petition under Sections 2 and 5 of Article V, Section 4 of Article XVIII, or Section 1 of Article XXIV of the Constitution, it is an "initiative or referendum" for the purposes of Section 16-119.

B. Voting to approve a resolution expressing views on a State Question, without more, does not constitute directing or authorizing the expenditure of public funds in support of or opposition to an initiative or referendum under Section 16-119.

¶10 The second and third elements of Section 16-119 are met only if the official act in question directs or authorizes the use of public funds under the care of the official in support of or opposition to an initiative or referendum.
¶11 It is important to note at the outset that this provision does not prohibit a public official from voicing his or her views on such measures, but only restricts the expending of public funds to support or oppose a measure. Indeed, while Oklahoma Ethics Commission Rule 2.4 echoes Section 16-119's prohibition, it explicitly recognizes the well-established principle that elected officials may give their opinion or position on any issue. Oklahoma Ethics Commission Rule 2.4 ("No person shall use or authorize the use of public funds, property or time to engage in activities designed to influence the results of an election for state office or a state question, except as permitted by law or these Rules. This section shall not prohibit an elected state officer from expressing his or her opinion or position on any issue.") (emphasis added). Rather than stifling a public official's ability to speak on ballot measures--a reading that may contravene the First Amendment to the United States Constitution--Section 16-119 prohibits only official acts that authorize or direct the expenditure of public funds to influence the vote on these measures.
¶12 With this constitutional consideration in mind, and because as noted above Section 16-119 is a penal statute carrying criminal consequences, the terms of Section 16-119 must be strictly construed to avoid penalizing speech not clearly covered by the statute. Thus, both (1) the nature of the act constituting an "expenditure of any public funds" and (2) whether that expenditure is in support of or opposition to an initiative or referendum must be narrowly construed.
¶13 As to whether an act is an "expenditure," this Office has stated that a violation of Section 16-119 cannot "depend on some possible indirect effect of a public official's action," but rather requires "direction or authorization for expenditure for the purpose of supporting or opposing an initiative of referendum." A.G. Opin. 96-23, at 78. Thus, we have previously defined an expenditure in the context of Section 16-119 as being "an actual disbursement or spending of money." A.G. Opin. 73-287, at 275. For example, Section 16-119 clearly prohibits a school district expending "public funds to influence the outcome of school millage elections." See A.G. Opin. 80-310.
[3] Similarly, Section 16-119 prohibits a State official from diverting public resources by directing State employees to use their time or State equipment to engage in activity seeking to influence the vote on an initiative or referendum. See A.G. Opin. 79-346. This includes using employee time to stuff envelopes mailed to citizens with flyers advocating for a particular position on a ballot measure. A.G. Opin. 80-241 and 249. In contrast, university officials' decision to allow students to use building space to solicit signatures on initiative petitions does not violate Section 16-119. A.G. Opin. 73-287, at 275 ("Merely allowing a booth in the Student Union would not be an 'expenditure of public funds' as contemplated by Section [16-119].")[4] 
¶14 Similarly, whether an "expenditure" constitutes actual support for or opposition to a measure also must be strictly construed. Public resources used to debate, consider, and research the effects of a referendum or initiative are not themselves acts "in support of, or in opposition to, any measure." 26 O.S.2011, § 16-119. For example, if a city council member tasks an employee with researching the effects on the city and its citizens of a proposed tax increase on the ballot, that act alone would not be directly supporting or opposing the measure in violation of Section 16-119. Instead, that act may be part of the council member's legitimate responsibilities in informing himself of a potential future law in preparation for its potential enactment and for potential constituent questions. Cf. A.G. Opin. 96-23, at 78 ("If a public entity's funding is going to be affected by the results of a pending election, the officials of that entity are not only entitled but obligated to consider that factor in planning expenditures from the entity's budget.").
¶15 Turning to the situation posed by your question, a resolution by the governing body of a city or municipality does not alone on its face involve the expenditure of public funds. Rather, it is merely the expression of the viewpoint of a majority of the members on the governing body.
[5] When a council member votes on whether to approve the resolution, that council member does not by that vote "direct or authorize the expenditure of any public funds." 26 O.S.2011, § 16-119. In contrast to the mere expression of a viewpoint (which is a protected right of every individual, including city council members), a vote to launch a campaign supporting or opposing a measure by mailing flyers, paying for billboards, or using public employee time to make phone calls or knock on doors would likely violate Section 16-119.
¶16 While other activities noted in your Question may involve the expenditure of public funds, those activities, unlike the vote on the resolution itself, do not themselves oppose or support any initiative or referendum. For example, use of a public space to assemble the governing body is for the purpose of conducting an official meeting, not for the direct purpose of supporting or opposing a measure, even if the space is also used as a forum for debate on the measure or for holding a vote on a resolution concerning the measure.
[6] Nor is use of staff time to prepare or research such a resolution itself an official act that opposes or supports a measure. These expenditures do not amount to a public campaign supported by public funds regarding a State Question--like those previously condemned by Attorney General opinions, see, e.g., A.G. Opin. 80-241--but at most are ancillary to the mere expression of the collective viewpoint of a city council. Again, appropriately applying a strict construction to Section 16-119, the only official act that directly supports or opposes a measure as posed by your Question is the act of voting on the resolution itself, which as stated above does not direct or authorize the expenditure of public funds.[7] 
¶17 To conclude, the act of a member of a city's or municipality's governing body to vote on a resolution that expresses a view on a State Question is not an act that, on its own and without more, violates Section 16-119. Although the act is one of an "official in this State" and the State Questions to which you refer are initiatives or referenda for the purposes of Section 16-119, the act of voting on a resolution does not direct or authorize the expenditure of public funds in support of or opposition to a measure, and other activities ancillary to the vote on the resolution are not themselves acts that support or oppose a measure. Nevertheless, we note that this conclusion is dependent on the facts assumed in your Question or otherwise presumed in this Opinion, and application of Section 16-119 may vary with the facts of each particular case. Thus, this Opinion does not reach a conclusion about whether Section 16-119 prohibits any specific acts that have actually occurred or will occur in particular cities or municipalities. 

¶18 It is, therefore, the Official Opinion of the Attorney General that:
1. Members of an elective governing body of a city or municipality voting on a resolution are each acting as an "official in this State" for the purposes of 

26 O.S.2011, § 16-119.
2. Measures authorized by Sections 2 and 5 of Article V, Section 4 of Article XVIII, or Section 1 of Article XXIV of the Constitution are measures "by means of the initiative or referendum" for the purposes of 26 O.S.2011, § 16-119, whether proposed by citizens or the Legislature.
3. The act of voting on a city or municipal resolution that solely expresses a viewpoint on an initiative or referendum measure does not itself, and without more, authorize "the expenditure of any public funds" for the purposes of 26 O.S.2011, § 16-119.
4. Other actions by public officials ancillary to a vote on such a resolution, such as use of public space to vote on the resolution, use of city council time as a forum to debate the measure, or use of staff time to research the effects of the measure, that do not themselves directly support or oppose a measure are not subject to the restrictions of 26 O.S.2011, § 16-119.
Mike Hunter
Attorney General of Oklahoma
Mithun Mansinghani
Solicitor General of Oklahoma 

FOOTNOTES
[1] Numerous statutes specifically define governing bodies of cities or municipalities as city commissions, city councils, boards of trustees, and boards of county commissioners--i.e. those governing bodies imbued with the power to govern cities and municipalities. See, e.g., 11 O.S.2011, § 33-102 (stating that for the purposes of public parks and recreation law, "the term 'governing body' means any city council, city commission, town board of trustees, board of county commissioners, school board, or other body acting in lieu thereof, in the State of Oklahoma"); 62 O.S.2011, § 823(3) (defining "governing body" under the Regional Economic Development District Act as "the city council, city commission, board of trustees of a municipality or the board of commissioners of a county;"); 11 O.S.2011, § 40-113 (defining "governing body" as "the city council, city commission or town board of trustees" for purposes of the Neighborhood Redevelopment Act). 
[2] This conclusion is confirmed by the ordinary meaning of the terms "initiative" and "referendum." An "initiative" is "the right or power to introduce a new measure or course of action;" "a procedure or device which enables a specified number of voters by petition to propose a law and secure its submission to the electorate for approval." Webster's Third New International Dictionary page 1164 (3d ed. 1993). A referendum is "the principle or practice of submitting to popular vote a measure passed upon or proposed by a legislative body or by popular initiative" and "a vote on a measure so submitted." Webster's Third New International Dictionary page 1908 (3d ed. 1993). See also A.G. Opin. 80-310, at 517 (providing an ordinary-meaning definition of the term "referendum"). 
[3] Likewise, in Attorney General Opinion 91-27, the Office was asked, "[w]ith regard to elections in the State of Oklahoma, are there statutory or constitutional provisions which authorize the use of public funds by state agencies or officials to advocate a specific election result?" Id. at 89. We opined that use of public funds by any official in the state to advocate a specific election result violated 26 O.S. § 16-119. Id. at 89. 
[4] In this respect, Section 16-119 differs notably from other provisions of law, such as Article II, Section 5 of the Oklahoma Constitution, which restricts both the expenditure of public funds and the use of public property, and Oklahoma Ethics Commission Rule 2.6, which restricts fundraising activity on State property "ordinarily [] used for the conduct of official state business." 
[5] The Oklahoma Municipal Code defines "Resolution" as "a special or temporary act of a municipal governing body which is declaratory of the will or opinion of a municipality in a given matter and is in the nature of a ministerial or administrative act. A resolution is not a law and does not prescribe a permanent rule of conduct or government." 11 O.S.2011, § 1-102.
[6] Moreover, as explained above, mere use of public space in circumstances where additional public funds are not being expended in order to advance or oppose a measure does not constitute an "expenditure" for the purposes of Section 16-119.
[7] Courts in other states have come to the same conclusion in similar circumstances. See King Cty. Council v. Pub. Disclosure Comm'n, 611 P.2d 1227, 1230-31 (Wash. 1980) (council members' vote to endorse a ballot measure did not violate state public funds or free election laws because "[a] campaign was not waged" by the public act nor did the council "disseminate literature, purchase ads, or allow employees to campaign on work time," and "[t]he public hearing was not an expenditure in support of the initiative" but rather "[t]he endorsement also served beneficial purposes, including generation of public interest and debate [and] informing citizens of their elected representatives' stands on the ballot issue"); League of Women Voters v. Countywide Crim. Justice Coordination Com., 203 Cal. ApP.3d 529, 560 (Cal. Ct. App. 1988) (board of supervisors meeting to endorse initiative permissible because "the simple decision, made in the regular course of a board of supervisors meeting which is open to the public and thus the expression of citizens' views, to go on record with such an endorsement in no event entails an improper expenditure of public funds" and "[w]hile it may be construed as the advocacy of but a single viewpoint, there is no genuine effort to persuade the electorate such as that evinced in the activities of disseminating literature, purchasing advertisements or utilizing public employees for campaigning during normal working hours").

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
2007 OK CR 39, 172 P.3d 199, 
STATE v. TRAN
Discussed

 
1999 OK CR 14, 989 P.2d 949, 70 OBJ 1076, 
State v. Young
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1989 OK 112, 777 P.2d 1331, 60 OBJ 1791, 
Quinn v. City of Tulsa
Discussed at Length

 
2001 OK 71, 33 P.3d 302, 72 OBJ 2703, 
SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed

 
2016 OK 86, 378 P.3d 1220, 
SAVE THE ILLINOIS RIVER, INC. v. STATE ex. rel. OKLA. STATE ELECTION BD.
Discussed

Title 11. Cities and Towns

 
Cite
Name
Level

 
11 O.S. 1-102, 
Definitions
Cited

 
11 O.S. 33-102, 
Definitions
Cited

 
11 O.S. 40-113, 
Definitions
Cited

Title 26. Elections

 
Cite
Name
Level

 
26 O.S. 16-119, 
Expenditure of Public Funds
Discussed at Length

Title 62. Public Finance

 
Cite
Name
Level

 
62 O.S. 823, 
Definitions
Cited