The STATE of Oklahoma ex rel. Henry G. WHITE, Douglas H. Grisham, Keith Odom, for the Use and Benefit of the BOARD OF COUNTY COMMISSIONERS OF GRADY COUNTY, Oklahoma, Plaintiff in Error,

v.

George R. BEELER, H. F. Nickelson, A. J. Tims, and Woodrow W. Bowers, and the Board of County Commissioners of Grady County, State of Oklahoma, Defendants in Error.

No. 37958.

Supreme Court of Oklahoma.

July 2, 1958.

O. B. Martin, Oklahoma City, for plaintiff in error.

William W. Grigsby, Melton, McElroy & Vaughn, Wilson Smithen, Chickasha, for defendants in error.

HALLEY, Justice.

This is an action by the State of Oklahoma ex rel. Henry G. White and two other resident taxpayers of Grady County for the use and benefit of that county, against the County Commissioners as individuals and as the Board of County Commissioners of Grady County, and Woodrow W. Bowers, the County Engineer of Grady County. We shall refer to the parties as plaintiffs and defendants as they appeared in the trial court.

Plaintiffs seek to recover from defendants a judgment for monies alleged to have been illegally and fraudulently paid by the County Commissioners to Woodrow W. Bowers as County Engineer for services rendered by him as an engineer in the construction of Farm-to-Market roads in Grady County, plus an equal amount as penalty. These roads were built under the supervision of the State Highway Commission, and the U. S. Bureau of Public Roads. Woodrow W. Bowers was serving as County Engineer of Grady County at a salary of $400 per month and also received a per cent of the cost of twelve Farm-to-Market roads constructed in Grady County. This money that he received above his salary is what the plaintiffs seek judgment for. This amounted to $6,515.30.

Plaintiffs alleged that they gave notice to and demanded that the Board of County Commissioners of Grady County bring an action to recover the money illegally and fraudulently paid out, and upon their failure and refusal to take such action, the plaintiffs filed this action, and defendants filed a motion to dismiss and a demurrer. The motion was overruled but the demurrer was sustained, and the case dismissed upon the election of the plaintiffs to plead no further, and plaintiffs have appealed.

Plaintiffs alleged that their right to recover rests upon certain provisions of our statutes, and in particular upon Section 298, 69 O.S.1951, which is as follows:

"The county highway engineer shall when requested by the county commissioners or the board of highway commissioners or any road supervisor in the county, give instructions or advice with reference to the construction, building or repairing of any roads or bridges, and shall not recieve compensation for any such instructions or advice."

Section 324 of the same Title is as follows:

"The Board of County Commissioners and the County Engineer are charged with the duty of such repairing and dragging of the road system as is required to keep the same in proper condition, and shall adopt such methods as are necessary to maintain continuously, in the best condition practicable, the entire mileage of this system.

"No member of the department of highways, their deputies or assistants, or any other person in the employ of the department, no County Commissioner, County Engineer, Road Superintendent, or any person in their employ, or one holding an appointment under them, shall be either directly or indirectly interested in any contract for the construction or building of any bridge or culvert, or of any improvement of any road or parts of road coming under the provisions of this Act."

Section 324, above quoted, was enacted in 1915, and deals with the construction and maintenance of county and township roads. A few amendments have been added but in substance it is the original 1915 Act.

Defendants contend that H.B.No.470, enacted by our 20th Legislature in April, 1945, and now appearing in part as Sections 669.2, 669.3, 727.8 and 732, 68 O.S. 1951 [Supp. 1957], are applicable and controlling as to the issues being considered. There is no dispute but that this Act was enacted for the express purpose of enabling Oklahoma to participate in the funds of the Federal Government made available to the states for building and improving Farm-to-Market roads.

This Federal Act, referred to as the "Federal Aid Act", provided that the county commissioners might let the contracts to individual contractors, or may construct the roads themselves, all under the supervision of the State Highway Commission, who must act under the regulations of the Federal Highway Act, which is found as Title 23, U.S.C.A., originally passed in 1921. Section 13 provided that the construction work on such roads must be done under the Federal law and under the direct supervision of the State Highway Commission, and all subject to the inspection and approval of the Secretary of Agriculture. The Secretary of Agriculture was later replaced by the Federal Highway Administrator.

Section 15 provides that if the state fails to maintain any road so constructed, the Federal Agency may proceed to have defects cured and the costs thereof charged against the Federal funds allotted to such state, and refuse to approve other projects in that state until it fully complies with the Federal Act.

A later amendment, Section 21d provides that the Federal Highway Administrator may expend funds in cooperation with the State Highway Commission for engineering services on roads constructed or improved with Federal funds, and that the State Highway Commission might agree with a city or town for the maintenance of a highway, but subject to the approval of the Federal Highway Administrator.

The Federal Acts place the entire responsibility for compliance with the Federal law upon the State Highway Commission.

H.B.No.470 is complete within itself, and nowhere refers to the much earlier statutes upon which plaintiffs rely. While the Federal Acts on aid to the states in constructing Farm-to-Market roads acts entirely through the State Highway Commission, which may, and here has used the Board of County Commissioners to perform the actual work, the fact remains that the rules and regulations of the Federal Act must be complied with, thus giving the Federal Agency complete control, though exercised through the State Highway Commission.

Defendants urge that a special or specific statute must prevail over a general statute, where no mention of the general statute is made in the special statute deal··

ing with some phase of the same subject matter. In Koch v. Oklahoma Turnpike Authority, 208 Okl. 556, 257 P.2d 790, it is said in the first paragraph of the syllabus as follows:

"Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedure from those in the general statute, it will be held that the special statute applies to the subject matter, and that the general statute does not apply."

The above rule is supported by many other Oklahoma decisions.

It is well established that where an Act is complete within itself it must control under the presumption that it must express the intention of the Legislature.

We agree with the defendants that the statute under which plaintiffs base their cause of action is a penal statute and must be strictly construed.

When the State Highway Commission found that the County Commissioners had fully complied with the Federal law as to the construction of Farm-to-Market roads and funds available for matching Federal aid funds, and entered into contracts, the cost of which was to be paid in part with Federal funds, it could agree with the County Commissioners to let them perform such contracts, the construction of such roads ceased to be under the jurisdiction of the county and outside the duties of the county engineer. They were in fact Federal aid projects and under the Federal Agency, acting through the State Highway Commission, during such period of time as these county roads were under and subject to the rules of the Federal Agency, their construction and repair did not fall within the authority of the County Commissioners nor were they within the duties of the county engineer. It follows that the funds charged and received by the county engineer for services rendered in their construction were lawful. Our statutes expressly provide that a county engineer on a salary basis, may also serve a second county as engineer at the same time and may perform services for others and receive pay therefor, so long as he is not neglecting his duties for which he receives a salary.

The judgment of the trial court is affirmed.

CORN, V. C. J., and DAVISON, JOHNSON, WILLIAMS and JACKSON, JJ., concur.

WELCH, C. J., and BLACKBIRD, J., dissent.