2003 OK 100

Rodney James WALTERS, individually and as parent and next of kin to Rodney James Walters, Jr., a minor, and Special Joy Bell, a minor, Plaintiffs/Appellants,

v.

J.C. PENNEY COMPANY, INC., a Delaware corporation, Chris Emler, an employee of J.C. Penney Company, Inc., and Steve Anderson, an employee of J.C. Penney Company, Inc., Defendants/Appellees.

No. 98,586.

Supreme Court of Oklahoma.

Nov. 25, 2003.

Vaughn Conway, Oklahoma City, OK, for Appellants.

Kenneth A. Brokaw, Day, Edwards, Federman, Propester & Christensen, P.C., Oklahoma City, OK, for Appellees.[1]

OPALA, V.C.J.

¶ 1 The sole issue tendered on certiorari is whether the nisi prius court erred when it gave summary judgment to the defendants on the false imprisonment claim. We answer in the affirmative. Although, like the Court of Civil Appeals [COCA], we reverse the trial court's disposition, today's resolution is effected by legal conclusions that differ from those reached by the appellate court's pronouncement. We hence vacate COCA's opinion, declare the issues that stand settled by the law of the case, reverse the summary judgment and remand the cause for further proceedings to be consistent with today's pronouncement.

I

THE ANATOMY OF LITIGATION

¶ 2 This controversy arose when Rodney James Walters [Walters] was detained by

---

1. Identified herein are only those counsel for the parties whose names appear on briefs or other materials submitted on certiorari.

Chris Emler [Emler] and Steve Anderson [Anderson], two employees of J.C. Penney Company, Inc. [J.C. Penney], on the suspicion that he had shoplifted a sweater from the store. Walters alleges that on 23 December 2000 he had been shopping with his two minor children at the J.C. Penney store in Quail Springs Mall in Oklahoma City. He submits that shortly after they left the store and while they were in the mall, Emler and Anderson violently "grabbed" his hand and the back of his sweater, falsely identified themselves as police officers, accused him of shoplifting the sweater he was wearing, handcuffed him, and led him back through the mall to the J.C. Penney store. Although Walters offered to prove the sweater had been purchased at the store earlier in the week, they called the Oklahoma City Police Department and continued to detain him. Even after it was determined he had in fact purchased the sweater, the police were not advised of this fact until after they had arrived at the store to arrest Walters.

¶ 3 Walters and his two children (collectively called Walters) brought an action against J.C. Penney and its employees for his wrongful detention, resting the claim on multiple theories of liability.[2] J.C. Penney invoked the provisions of 22 O.S.2001 §§ 1343, 1344,[3] whose joint effect is to create a statutory defense for merchants premised on a presumption of probable cause for the detention of a suspected shoplifter, and moved for

summary disposition of the claim in its favor. The trial court gave summary judgment to J.C. Penney on all theories pressed. COCA held that the trial court correctly disposed of certain issues but declared other issues unfit for summary resolution. The appellate court reversed the judgment and remanded the cause for further proceedings to be consistent with its pronouncement. Certiorari was granted on J.C. Penney's petition.

## II

## STANDARD OF REVIEW ON SUMMARY PROCESS

¶ 4 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes [4]—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process.[5] Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense.[6] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for *nisi prius* resort to summary process.[7]

¶ 5 Summary relief issues stand before us for *de novo* review.[8] All facts and

2. The theories of liability advanced by Walters are assault and battery, malicious prosecution, negligence, intentional infliction of emotional distress, false imprisonment, defamation, all of these with a quest for punitive damages.

3. For the pertinent terms of 22 O.S.2001 §§ 1343 and 1344, see *infra* notes 19 and 20.

4. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Memorial Hosp.*, 1995 OK 112, ¶ 15, n. 35, 909 P.2d 765, 773, n. 35. *See also Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 926–27.

5. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the tendered proof in the record reveals only undisputed material facts *supporting but a single inference* that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Em-*

*ployers Workers' Compensation Ass'n*, 1998 OK 113, ¶ 7, 980 P.2d 109, 112; *Hulsey v. Mid-America Preferred Ins. Co.*, 1989 OK 107, ¶ 8, n. 15, 777 P.2d 932, 936, n. 15.

6. To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary materials which are offered by the parties in acceptable form. *Polymer, supra* note 5 at ¶ 8, at 113.

7. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶ 7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

8. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is reviewable by a *de novo* standard. *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083 ("Issues of law are reviewable by a de novo standard and an

inferences must be viewed in the light most favorable to the non-movant.[9] Just as *nisi prius* courts are called upon to do, so also appellate tribunals bear an affirmative duty to test for its legal sufficiency all evidentiary material tendered in summary process to support the relief sought by the movant.[10] Only if the court should conclude that there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor.[11]

## III

### CERTAIN ADVERSE COCA ISSUE RESOLUTIONS, WHICH THE PARTIES HAVE FAILED TO RE–PRESS OR OTHERWISE TENDER ON CERTIORARI, ARE DECLARED TO CONSTITUTE SETTLED LAW OF THE CASE

¶ 6 The settled-law-of-the-case doctrine bars from relitigation issues finally determined in the review process or those that the aggrieved party has failed to raise in the course of the appellate contest.[12] Issues

appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings.").

9. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

10. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

11. It is not the purpose of summary process to substitute a trial by affidavit for one by jury. Rather, it is to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *State ex rel. Fent v. State ex rel. Okla. Water Resources Bd.*, 2003 OK 29, ¶ 14, n. 31, 66 P.3d 432, 440, n. 31; *Bowers v. Wimberly*, 1997 OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

12. *Nichols v. Mid–Continent Pipe Line Co.*, 1996 OK 118, ¶ 24, 933 P.2d 272, 281; *Morrow Development Corp. v. American Bank and Trust Co.*, 1994 OK 26, ¶ 2, 875 P.2d 411, 413. The doctrine embodies a judicial economy notion designed to prevent "rehashing" of issues in successive appeals. *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 22, 987 P.2d 1185, 1195.

resolved by COCA but not explicitly repressed for certiorari review are deemed abandoned and beyond this court's cognizance for corrective relief.[13]

¶ 7 COCA held the trial court correctly gave summary relief to J.C. Penney on four theories of liability advanced by Walters—assault and battery, malicious prosecution, negligence and intentional infliction of emotional distress.[14] Walters has failed to preserve these issues for corrective relief by timely including them in a petition for certiorari. The correctness of these adverse COCA dispositions now lies beyond the scope of this court's reviewing cognizance.

¶ 8 COCA declared that the actionability of the remaining three theories of recovery—**false imprisonment, slander** and **pecuniary** damages—presents material issues of fact for the jury and are hence unfit for summary disposition. J.C. Penney's certiorari argument addresses only the first issue, that of false imprisonment. Because it has failed to press for review COCA's resolution of the slander and pecuniary damages issues, they too are deemed waived. No relief avails any longer from those adverse COCA dispositions.[15] **The sole remaining issue tendered**

13. *Morrow, supra* note 12, at ¶ 2, at 413; *Hough v. Leonard*, 1993 OK 112, ¶ 15, 867 P.2d 438, 445.

14. COCA held that (1) Walters failed to place of record facts that would establish a substantial controversy supporting the theory of assault and battery when he was detained in the shopping mall, (2) the malicious prosecution theory was not supported by proof that J.C. Penney initiated legal proceedings against Walters, (3) the only evidentiary material cited in support of Walters' negligence theory, a page from the deposition of J.C. Penney's employee, was missing from the record, and (4) Walters tendered no proof of extreme and outrageous conduct in support of his intentional infliction of emotional distress theory.

15. At that juncture of appellate contest it became incumbent upon J.C. Penney to challenge the correctness of the appellate court's declaration that the slander and pecuniary damages issues were unfit for summary disposition. A timely quest for corrective relief from COCA's resolution is absent from J.C. Penney's certiorari paperwork. *Hough, supra* note 13, at ¶ 15, at 445, teaches that an issue resolved by COCA but not presented by a party's petition for certiorari will not be considered.

for corrective relief by certiorari proceedings now before us is the actionable and triable character of Walters' false imprisonment claim.

## IV

## THE FALSE IMPRISONMENT THEORY OF LIABILITY

¶ 9 False imprisonment is a common-law wilful tort.[16] The essential elements of the tort are (a) the detention of a person against his (or her) will and (b) the unlawfulness of the detention.[17] At common law a merchant who detained another on a reasonable *but mistaken belief* that the person had stolen some merchandise would have been subject to a claim for false imprisonment.[18] The legislature modified this ancient rule by its enactment of 22 O.S.2001

§§ 1343[19] and 1344.[20] The terms of § 1343 protect from civil and criminal liability a merchant who (a) has *reasonable grounds* or *probable cause* to believe that a person has wrongfully shoplifted merchandise and (b) detains that person in a *reasonable manner* and *for a reasonable length of time.*[21] Section 1344 creates a *presumption of probable cause to believe that concealed unpurchased merchandise was shoplifted.*

¶ 10 J.C. Penney interposed these statutory provisions as its defenses to Walters' false imprisonment claim. Its certiorari brief primarily challenges COCA's declaration that the § 1344 *presumption of probable cause* does not avail here because the *merchandise in suit was not concealed.* According to J.C. Penney, (a) COCA's narrow construction of § 1344 thwarts the legislative intent and (b) the statutory presumption should be invo-

---

16. RESTATEMENT (SECOND) OF TORTS § 35, Comment a. The tort of false imprisonment developed from the common-law action of *trespass vi et armis.* Joseph W. Little, TORTS: THE CIVIL LAW OF REPARATION FOR HARM DONE BY WRONGFUL ACT, § 12.02 at 589, 591 (1985).

17. RESTATEMENT (SECOND) OF TORTS § 35; *Joseph W. Little, supra* note 16, at § 12.02 at 591; H. Gerald Chapin, LAW OF TORTS, § 64, p. 273 (1917).

18. *See, e.g., Alvarado v. City of Dodge City*, 238 Kan. 48, 708 P.2d 174, 180–81 (1985); Annot., Robert A. Brazener, *Construction and Effect, in False Imprisonment Action, of Statute Providing for Detention of Suspected Shoplifters*, 47 A.L.R.3d 998 (1973); *Chapin, supra* note 17, at § 65, p. 284.

19. The terms of 22 O.S.2001 § 1343 are:
*Any merchant, his agent or employee,* who has *reasonable grounds* or *probable cause* to believe that a person has committed or is committing a wrongful taking of merchandise or money from a mercantile establishment, *may detain such person* in a *reasonable manner* for a *reasonable length of time* for all or any of the following purposes:
(a) *Conducting an investigation,* including reasonable interrogation of the detained person, as to whether there has been a wrongful taking of such merchandise or money;
(b) *Informing the police* or other law enforcement officials of the facts relevant to such detention;
(c) *Performing a reasonable search* of the detained person and his belongings when it appears that the merchandise or money may otherwise be lost; and
(d) *Recovering the merchandise* or money believed to have been taken wrongfully. *Any*

such reasonable detention shall not constitute an unlawful arrest or detention, nor shall it render the merchant, his agent or employee criminally or civilly liable to the person so detained.
(emphasis added).

20. The terms of 22 O.S.2001 § 1344 are:
Any person **concealing unpurchased merchandise** of any mercantile establishment, either on the premises or outside the premises of such establishment, **shall be presumed to have so concealed such merchandise** with the intention of committing a wrongful taking of such merchandise within the meaning of Section 1341 of this title, and such **concealment** or the finding **of such unpurchased merchandise** concealed upon the person or among the belongings of such person **shall be conclusive evidence of reasonable grounds and probable cause for the detention** in a reasonable manner and for a reasonable length of time, of such person by a merchant, his agent or employee, and any such reasonable detention shall not be deemed to be unlawful, nor render such merchant, his agent or employee criminally or civilly liable.
(emphasis added).

21. *In Roberts v. Goodner's Wholesale Foods, Inc.*, 2002 OK CIV APP 73, 50 P.3d 1149, 1152, the appellate court states that "probable cause is a complete defense" to a claim for false arrest. Probable cause represents but **one element of the three-part test** for invocation of the statutory defense against wrongful detention. Two other essential components of the test are (a) the detention must be in a *reasonable manner* and (b) for a *reasonable length of time.*

cable *when the merchandise is either concealed or in plain sight.* J.C. Penney urges there are sufficient undisputed facts in the record to support its claim to the statutory defense.

## A.

### The 22 O.S.2001 § 1344 Presumption Of Probable Cause Is Not Invocable in the Scenario Unfolded by the Proof

¶ 11 The terms of § 1344 create the presumption that *when unpurchased merchandise is concealed,* the act (1) is done with the *intention of depriving the owner of the property* and (2) the merchant may view it as *conclusive of reasonable grounds or of probable cause* for the detention of a suspected shoplifter. The presence of two critical elements is required for the invocation of this statutory presumption—the merchandise in question must be both *"unpurchased"* and *"concealed."* Section 1344 is a penal statute and must be strictly construed.[22] The words in a statute are to be understood in their ordinary legal sense except when a contrary intention plainly appears.[23] Section 1344 clearly does not raise a probable cause presumption for **purchased merchandise worn in plain view.**[24]

22. Strict construction of a penal statute is that which refuses to extend the law beyond the legitimate import of its words. The decision to make a statute of this kind applicable to one's activity must be clear and without doubt. *So–Lo Oil Co., Inc. v. Total Petroleum, Inc.,* 1992 OK 71, ¶ 8, 832 P.2d 14, 18–19; *Quinn v. City of Tulsa,* 1989 OK 112, ¶ 44, 777 P.2d 1331, 1339–40; *State ex rel. White v. Beeler,* 1958 OK 168, ¶ 16, 327 P.2d 664, 668.

23. The pertinent terms of 25 O.S.2001 § 1 are:
    Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, . . .
    *Duncan Medical Services v. State ex rel. Oklahoma Tax Com'n.,* 1994 OK 91, ¶ 18, 911 P.2d 247, 253–54; *Tate v. Browning–Ferris, Inc.,* 1992 OK 72, ¶ 15, 833 P.2d 1218, 1228; *Hess v. Excise Bd. of McCurtain County,* 1985 OK 28, ¶ 6, 698 P.2d 930, 932.

24. J.C. Penney relies on *Henry v. Shopper's World,* 200 N.J.Super. 14, 490 A.2d 320 (1985), for an extension of the statutory presumption to merchandise worn in plain view. There, the court held that the meaning of the words "concealed unpurchased merchandise" need not be

¶ 12 The statutory presumption is facially inapplicable to the scenario unfolded by the proof in this case. It is undisputed that the blue sweater—plainly in sight—but suspected of having been shoplifted was not stolen but rather had been **purchased** a few days earlier at the same Penney's store. A probable cause presumption is clearly not justified by the facts elicited.

## B.

### Conflicting Inferences May Be Drawn From Uncontroverted Facts On Which J.C. Penney Relied For Summary Judgment On Its § 1343 Defense Against The False Imprisonment Claim

¶ 13 Against the false imprisonment claim J.C. Penney interposed the § 1343 defenses of *probable cause* and of the *reasonableness of the detention.* These two critical and dispositive fact issues call for application of a *variable* (rather than legally fixed)[25] *standard of care.* That standard shifts with the *circumstances* of each case.[26] A variable standard that is one's due *is judged* by *objective criteria.* We pose and must resolve here the issue whether the facts available to the detaining party would war-

limited to merchandise which is hidden or out of sight, but that in keeping with the legislative objectives may be construed as applying to items in plain view but worn or carried as though they had been purchased. We reject the New Jersey approach which gives an unnatural meaning to the word "concealed" and is in conflict with the term's common signification.

25. A legally fixed (as distinguished from a variable) standard is one that is firmly and precisely defined by the law. *Salazar v. City of Oklahoma City,* 1999 OK 20, ¶ 20, 976 P.2d 1056, 1064.

26. Only where the law definitely prescribes the standard to be followed may the court ever be warranted in taking the case from the jury. *Salazar, supra* note 25, at ¶ 20, at 1064 (the degree of care that an ordinarily prudent person should exercise in a given scenario where the law has not definitely prescribed the standard of care to be followed presents an issue for the jury); *Wetsel v. Independent School District I–1,* 1983 OK 85, ¶ 8, 670 P.2d 986, 990–91; *Ponca City Ice Co. v. Robertson,* 1917 OK 559, ¶ 8, 169 P. 1111, 1113, 67 Okl. 86; *Littlejohn v. Midland Valley Ry. Co.,* 1915 OK 174, ¶ 4, 148 P. 120, 121, 47 Okl. 204.

rant a *reasonably prudent person* to believe that the person in question had been shoplifting.[27] **Because there exist no fashioned legal standards for gauging the invoked § 1343 defenses,[28] the presence (or absence) of probable cause and the reasonableness of the detention tender an issue for jury resolution.[29]** Moreover, when uncontroverted proof lends support to conflicting inferences, the choice to be made between the opposite alternatives does not present an issue of law but rather one for the trier of fact.[30]

¶ 14 The observations of Anthony Bonadio, a temporary floor stocker at the J.C. Penney store, resulted in Walters' detention. According to his testimony, a black male with two black female companions, one of whom was pushing a baby carriage, walked past him in the store. A few minutes later he observed what appeared to be the same man, who was then wearing a different colored shirt. Bonadio saw him raising up and coming from behind a sweater counter, adjusting the collar and sleeves of the baby blue sweater that he was wearing and pulling out a necklace. The two women came over to him, and one of them said, "Boy, you're so crazy, you think you're a Pimp now?" Bonadio did not observe the man put on the sweater. After watching him leave the area (with his two companions) wearing a blue-colored sweater, Bonadio informed security personnel that this person needed to be checked. He told Emler that he believed he "saw an African–American male stealing a baby blue sweater off the St. John's Bay shelf." He

did not tell Emler about the two women and the baby carriage because "he [Emler] wasn't really concerned about that." He later found a tag on the floor from the same or similar type of sweater. Emler testified that the information Bonadio gave him was sufficient for him to talk to Walters.

¶ 15 Emler and Anderson came upon Walters in the mall a few minutes after the suspected shoplifter had left the J.C. Penney store. Walters was wearing a baby blue sweater and was shopping with his two children. He testified that Emler "did a quick flip of a badge" and said to him, "I'm the police. You're under arrest." Walters said he told his children to follow him back into J.C. Penney's and wait for him in the shoe department. He then went with Emler to the loss prevention office where Emler patted him down. Bonadio testified he was never asked by any J.C. Penney employee to verify that the individual they brought back into the office wearing handcuffs was the same person as that whom he had observed earlier in the store. Walters testified he told Emler to pull his wallet out of his back pocket and look at the check carbon, which was a check register of the check he had written to J.C. Penney two days earlier for the sweater he was wearing. Emler and Anderson set him down, still handcuffed, and took his wallet. Emler called the police department and requested that some officers be sent to the loss prevention office. After talking to the police, Emler asked Walters, "Now, are you going to give me back my

27. *See in this connection Dixon v. S.S. Kresge, Inc.,* 119 Ga.App. 776, 169 S.E.2d 189, 191 (1969); *Clark v. I.H. Rubenstein, Inc.,* 326 So.2d 497, 499 (La.1976); *Coblyn v. Kennedy's, Inc.,* 359 Mass. 319, 268 N.E.2d 860, 864 (1971); *Lukas v. J.C. Penney Co.,* 233 Or. 345, 378 P.2d 717, 720 (1963); *Delp v. Zapp's Drug & Variety Stores,* 238 Or. 538, 395 P.2d 137, 139 (1964); *Terry v. Zions Cooperative Mercantile Institution,* 605 P.2d 314, 320 (Utah 1979), *on reh.* 617 P.2d 700 (1980); *Alvarado, supra* note 18, at 180–81; *see generally* Annot., *Construction and Effect, in False Imprisonment Action, of Statute Providing for Detention of Suspected Shoplifters,* 47 ALR3d 998.

28. *Ponca City Ice Co., supra* note 26, at ¶ 8, at 1113; *Littlejohn, supra* note 26, at ¶ 4, at 121; *City of Cushing v. Stanley,* 1918 OK 122, ¶ 0 syl.,

172 P. 628, 68 Okl. 155; *Sand Springs Ry. Co. v. Cole,* 1955 OK 9, ¶ 12, 279 P.2d 938, 942–43; *Lee v. Darden,* 1966 OK 220, ¶ 12, 421 P.2d 845, 848; *Federer v. Davis,* 1967 OK 208, ¶ 7, 434 P.2d 197, 198–199.

29. *Byford v. Town of Asher,* 1994 OK 46, ¶ 26, 874 P.2d 45, 56 (Opala, J., concurring) (in a negligence case where both the claim and defense rested on variable standards of safety, the liability's resolution presented a jury question); *Alvarado, supra* note 18, at 180–81 (whether the merchant's agent had probable cause to detain the suspected shoplifter and whether he was detained in a reasonable manner and for a reasonable length of time present fact issues for the jury).

30. *Wetsel, supra* note 26, at 990–91.

sweater." Walters responded, "No, it's not your sweater. It's mine. I've given you my proof." He testified that Emler then told him that he would call the Department of Human Services to pick up his kids. While Walters was still handcuffed, Anderson came back into the room and told him that he had checked the store's register tape and was going to have to let him go. Walters said the police officers arrived as Anderson was taking off the handcuffs.

¶ 16 Inferences that may be drawn from undisputed facts are mixed. On the one hand the proof would support the view (a) that a person had ducked behind a counter and put on a sweater with the intention of stealing it, (b) that the woman's comments were directed to his actions and (c) the handcuffing of the suspected shoplifter was necessary under the circumstances. But on the other hand, a reasonable person could have concluded with equal cogence that (a) the person Bonadio observed had merely been looking at sweaters located on a bottom shelf and while rising to a standing position was simply adjusting his sweater so that his necklace could be seen, (b) the woman's comments were no more than a friendly observation about his attire and (c) the circumstances did not warrant handcuffing the suspected shoplifter. These inferences are both **consistent** and **inconsistent** with **reasonable grounds** for Walters' detention as well as with the *reasonableness* in *the manner of his detention.* In short, the choice to be made between these opposite alternatives clearly presents a fact issue for the jury.[31] Because J.C. Penney is not entitled to the § 1344 presumption, it must on remand establish by proof (1) the presence of probable cause to detain Walters and (2) the reasonableness of its employees' mid-detention conduct.[32]

¶ 17 Where, on the judgment's reversal, a cause is remanded, it returns to the trial court as if it had never been decided, save only for the "settled law" of the case.[33] In postremand process the settled law of the case operates upon all the facts revealed by the probative materials before the court at the time the law's settling took place.

## V

### SUMMARY

¶ 18 By the settled-law-of-the-case doctrine neither this court nor the trial court may revisit issues that have been waived by the parties' failure to press on certiorari. The issues (settled by COCA) which now stand finally resolved are: (1) the theories of liability based on assault and battery, negligence, malicious prosecution and negligence are without support in the record and hence without actionable character and (2) the slander theory of liability as well as Walters' quest for punitive damages present fact issues for the trier.

¶ 19 The § 1344 presumption of probable cause to detain a person on suspicion of shoplifting may be invoked when unpurchased merchandise has been concealed. This provision is facially uninvocable in the scenario unfolded by the proof here. This is so because the sweater in controversy was purchased and worn in plain view. J.C. Penney's interposition of the § 1343 defense against the false imprisonment claim tenders two critical issues that are governed by an objective and variable standard of care which lacks a precise definition [34]—whether there was probable cause for the detention and whether the mid-detention conduct of J.C. Penney's employees was reasonable. Where the statutory tort defense invoked to defeat a false imprisonment claim rests on a standard that is not legally fixed with precision but

31. *Wetsel, supra* note 26 at 990–91.

32. Mid-detention conduct means that which occurred between Walters' detention and release.

33. *Seymour v. Swart,* 1985 OK 9, ¶¶ 8–9, 695 P.2d 509, 512–513; *Russell, supra* note 7, at ¶ 35, at 504.

34. *Dixon, supra* note 27 at 191; *Clark, supra* note 27 at 499; *Coblyn, supra* note 27 at 864; *Lukas, supra* note 27 at 720; *Delp, supra* note 27 at 139; *Terry, supra* note 27 at 320; *Alvarado, supra* note 18 at 180–81; *Salazar, supra* note 25, at ¶ 20, at 1064; *Wetsel, supra* note 26, at ¶ 8, at 990–91; *Ponca City Ice Co., supra* note 26, at ¶ 8, at 1113; *Littlejohn, supra* note 26, at ¶ 4, at 121; *Annot, supra* note 27, at § 4.

remains variable—thus fluctuating with the circumstances of the case—the presence or absence of reasonableness tenders a controversy for jury resolution. In short, on remand the trier must, **at a minimum,** resolve the two critical and dispositive disputed fact issues, both governed by an objective and variable standard of care.

¶ 20 On certiorari granted upon the defendants' petition, the Court of Civil Appeals' opinion is vacated; certain identified issues are declared to have been settled by the law of the case and others—pressed anew on certiorari—stand resolved by legal conclusions that differ from those reached by the Court of Civil Appeals; the trial court's summary judgment is reversed and the cause remanded for further proceedings to be consistent with both the identified settled law and with today's pronouncement.

¶ 21 HODGES, LAVENDER, SUMMERS, and BOUDREAU, JJ., concur.

¶ 22 WATT, C.J., and KAUGER, J., concur in result.

¶ 23 HARGRAVE and WINCHESTER, JJ., dissent.

