Dear Governor Fallin:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Article X, Section 11 of the Oklahoma Constitution prohibits a state officer from receiving any interest, profit or perquisites arising from the use or loan of public funds in his hand or to be raised through his agency for the State. In light of Article X, Section 11 of the Oklahoma Constitution may the Governor's spouse, who is a practicing attorney, continue to be paid by CompSource Oklahoma and/or the University of Oklahoma for providing legal services?
 I. BACKGROUND A. Factual Background
As your request letter indicates, your spouse has been a practicing attorney in Oklahoma for the past twenty-seven years and has represented various clients in his practice throughout those years.[1] As part of that practice your spouse has been representing CompSource Oklahoma for approximately the last seventeen years and the University of Oklahoma for approximately five years. See id. You state that his relationships with those clients were established long before you were elected Governor.See id.
You also state that once you were elected Governor, your spouse decided to suspend his legal work for both CompSource Oklahoma and the University of Oklahoma, until a determination could be made regarding whether his representation would violate the provisions of Article X, Section 11 of the Oklahoma Constitution. See id. *Page 2 
 B. Article X, Section 11's Prohibitions
Your question relates solely to Article X, Section 11's prohibitions. Accordingly, in addressing your questions related to the application of Article X, Section 11 of the Oklahoma Constitution we have neither consulted nor considered the rules of the Oklahoma Ethics Commission, as the interpretation and application of those rules are within the purview of the Ethics Commission.
Article X, Section 11 is one of the provisions in the Oklahoma Constitution that serves to prohibit and avoid conflicts of interests. Under the terms of that section, public officers are prohibited from receiving benefits from the use of public funds in their hands or raised through their agencies. It provides:
 The receiving, directly or indirectly, by any officer of the State, or of any county, city, or town, or member or officer of the Legislature, of any interest, profit, or perquisites, arising from the use or loan of public funds in his hands, or moneys to be raised through his agency for State, city, town, district, or county purposes shall be deemed a felony. Said offense shall be punished as may be prescribed by law, a part of which punishment shall be disqualification to hold office.
Id. (emphasis added).
C. As a Penal Law, Article X, Section 11 of the OklahomaConstitution Must Be Strictly Construed.
As the Oklahoma Supreme Court has recognized on several occasions, provisions in the Constitution are construed "using the usual rules of statutory construction." E.g. City of Guymon v.Butler, 92 P.3d 80, 84 (Okla. 2004); Cowart v. PiperAircraft Corp., 665 P.2d 315, 317 (Okla. 1983).
One of the rules of statutory construction, applicable to statutes as well as constitutional provisions, is the rule recognized by the Oklahoma Supreme Court in Walters v. J.C. Penney Co.,82 P.3d 578 (Okla. 2003), that penal statutes "must be strictly construed." Id. at 584. In explaining the nature of the required strict construction, Walters stated:
 Strict construction of a penal statute is that which refuses to extend the law beyond the legitimate import of its words. The decision to make a statute of this kind applicable to one's activity must be clear and without doubt. So-Lo Oil Co., Inc. v. Total Petroleum, Inc., 1992 OK 71, ¶ 8, 832 P.2d 14, 18-19; Quinn v. City of Tulsa, 1989 OK 112, ¶ 44, 777 P.2d 1331, 1339-40; State ex rel. White v. Beeler, 1958 OK 168, ¶ 16, 327 P.2d 664, 668.
Id. at 585, n. 22. *Page 3 
The Oklahoma Court of Criminal Appeals applies the same rule of construction, requiring that penal statutes be strictly construed.State v. Patton, 837 P.2d 483, 484 (Okla. Crim. App. 1992).
At least three Attorney General Opinions have applied the rule of construction that penal statutes must be strictly construed to the constitutional provision before us — Article X, Section 11 of the Oklahoma Constitution. See A.G. Opins. 2005-13, at 70, 72; 2004-40, at 264; 2003-17, at 101, 104. We must, therefore, in applying the provisions of Article X, Section 11 of the Oklahoma Constitution to the question presented, strictly construe theprovision, and accordingly not extend it beyond the import of its language.
 II. BECAUSE THE APPLICABLE PROVISIONS OF ARTICLE X,SECTION 11 APPLY TO THE USE OR LOAN OF PUBLIC FUNDS, AND BECAUSE THE MONIES OF COMPSOURCE OKLAHOMA ARE NOT PUBLIC FUNDS, THE PROHIBITIONS OF ARTICLE X, SECTION 11 DO NOT APPLY TO THE MONIES OF COMPSOURCE OKLAHOMA. ACCORDINGLY, THE SECTION DOES NOT PROHIBIT THE GOVERNOR'S SPOUSE FROM BEING PAID ATTORNEY FEES FROM COMPSOURCE OKLAHOMA FUNDS.
CompSource Oklahoma was established by the Oklahoma Legislature at 85 O.S. 2001, § 131[85-131]. See
2001 Okla. Sess. Laws ch. 378, § 1 (recodified as amended at 85 O.S. 2011, § 375[85-375], see
2011 Okla. Sess. Laws ch. 318, § 88). In pertinent part, Section 375, provides:
 There is hereby created and established a fund to be known as "CompSource Oklahoma", to be administered by a President and Chief Executive Officer, without liability on the part of the state beyond the amount of said fund, for the purpose of insuring employers against liability for compensation under Sections 131 through 151 of this title, and for assuring for the persons entitled thereto compensation provided by the workers' compensation law, and for the further purpose of insuring persons, firms and corporations against loss, expense or liability by reason of bodily injury, death by accident, occupational disability, or occupational disease suffered by employees, for which the insured may be liable or have assumed liability. Said fund may further provide insurance for employers against liability incurred as the result of injuries sustained by employees engaged in employment subject to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C., Section 901 et seq., or employees engaged in employment subject to Title IV of the Federal Coal Mine Health and Safety Act of 1969 as amended by the Black Lung Benefits Act of 1972, as enacted or as may be amended by the Congress of the United States.
 (a) CompSource Oklahoma shall be a revolving fund and shall consist of all premiums received and paid into said fund for insurance issued, all property and securities acquired by and through the use of monies belonging to the fund and all interest earned upon monies belonging to the fund and deposited or invested as herein provided. *Page 4 
 . . . .
 (e) The official name of the fund which is known as "The State Insurance Fund" shall be designated in all future references as "CompSource Oklahoma". Any references in the Oklahoma Statutes to The State Insurance Fund shall be deemed references to CompSource Oklahoma.
85 O.S. 2011, § 375[85-375] (emphasis added).
As subsection (e), of Section 375 makes clear, CompSource Oklahoma is to be known as "The State Insurance Fund," which in the future shall be designated as "CompSource Oklahoma," and all references to the State Insurance Fund shall be deemed references to CompSource Oklahoma.
Both the Oklahoma Supreme Court and the Oklahoma Court of Criminal Appeals have determined that money in the State Insurance Fund — also known as CompSource Oklahoma — are not publicfunds. In Moran v. State ex rel. Derryberry,534 P.2d 1282 (Okla. 1975), policy owners of the State Insurance Fund brought suit seeking to enjoin the statutorily directed liquidation of certain assets of the Fund and the subjection of such funds to legislative appropriation. In holding that the statutes being challenged were unconstitutional, the court concluded that the funds of the State Insurance Fund were not state funds, holding:
 It is our conclusion the funds of the State Insurance Fund are not State funds and do not belong to the State, that such funds are trust funds for the benefit of employers and employees, and are not available for the general or other purposes of the State, nor are they subject to appropriation by the Legislature for purposes other than those contemplated by the State Insurance Fund Act.
Id. at 1288 (emphasis added).
To similar effect, in State v. Young,989 P.2d 949 (Okla. Crim. App. 1999), the Oklahoma Court of Criminal Appeals came to a like conclusion. The Young case was an appeal arising from a criminal prosecution for making false claims against the State. After recognizing that the State Supreme Court's opinion in Moran (discussed above), was not binding on the court, the Court of Criminal Appeals found Moran's discussion persuasive and concluded that based on that case and its discussion, the funds in the State Insurance Fund — against which the alleged false claims were made — "are not public funds."Id. at 953 (emphasis added). Thereafter, Young concluded that the district court had not abused its discretion in "finding that the funds of the Oklahoma State Insurance Fund arenot `public funds.'" Id. at 955 (emphasis added).
In reaching these conclusions, the Oklahoma Court of Criminal Appeals noted that the Oklahoma Supreme Court, throughout itsMoran decision, used the terms "public funds" and "state funds" interchangeably: *Page 5 
 However, the question considered in the Moran appeal was the matter of the legal status of the funds of the State Insurance Fund. Throughout the discussion of that issue, the terms public fund(s) and state fund(s) are used interchangeably by the Supreme Court. The difference the State cites to in the use of the terms "public funds" and "state funds" is, in this particular case, a distinction that makes no difference. The nature of the funds is what was being determined by the Supreme Court, and the Moran holding is clear that the funds of the State Insurance Fund are not available for public use.
Id. at 954 n. 1.
We thus conclude, that the funds of CompSource Oklahoma — also known as the State Insurance Fund — are notpublic funds, and accordingly the applicable prohibitions of Article X, Section 11 do not apply to the monies of CompSource Oklahoma, because Article X, Section 11 `s prohibitions apply onlyto public funds. This being the case, even if the funds of CompSource Oklahoma could somehow be deemed to be funds in the Governor's hands or raised through her agency, the prohibitions of Article X, Section 11 do not apply because CompSource Oklahoma's funds are not public funds. The Governor's spouse, therefore, can perform legal work for CompSource Oklahoma and be compensated from its funds, and such does not violate Article X, Section 11.
 III. THE PROHIBITIONS OF ARTICLE X, SECTION 11 DO NOT APPLY TO ALL PUBLIC FUNDS. RATHER, THE PROHIBITIONS APPLY ONLY TO THE USE OR LOAN OF PUBLIC FUNDS IN THE OFFICER'S HANDS OR MONIES TO BE RAISED THROUGH THE OFFICER'S AGENCY. THUS, THE APPLICATION OF THE PROHIBITIONS OF ARTICLE X, SECTION 11 TO THE GOVERNOR ATTACH ONLY TO MONIES IN THE GOVERNOR'S HANDS OR RAISED THROUGH THE GOVERNOR'S OFFICE. BECAUSE THE PUBLIC FUNDS OF THE UNIVERSITY OF OKLAHOMA ARE IN NEITHER THE GOVERNOR'S HANDS NOR RAISED THROUGH THE GOVERNOR'S OFFICE, ARTICLE X, SECTION 11's PROHIBITIONS DO NOT PROHIBIT THE UNIVERSITY OF OKLAHOMA FROM USING ITS PUBLIC FUNDS TO PAY ATTORNEY FEES TO THE GOVERNOR'S SPOUSE. A. The University of Oklahoma's Monies are PublicFunds.
Unlike the funds of CompSource Oklahoma, which are not public funds, the funds of the University of Oklahoma are generally public funds, used generally for the operation of the University.See Article XIII-A, Section 3 (requiring the Oklahoma State Regents for Higher Education to make *Page 6 
allocations of monies from the lump-sum, higher education consolidated appropriation to each institution within the State System of Higher Education, including the University of Oklahoma, according to the needs and functions of the institution); A.G. Opin. 79-12, at 19-20 (concluding that the Oklahoma Regents for Higher Education, in allocating funds to state institutions, are required to use line item allocations when allocating funds to the operating accounts of the institutions of higher education); 62 O.S.Supp. 2010, § 34.53[62-34.53](A)(2) (specifying the type of account classifications to be used by the Board of Regents in making its allocations).
 B. The Prohibitions of Article X, Section 11 Do Not Apply to All Public Funds. They Apply Only to Monies in the Officer's Hands or Raised Through the Officer's Agency.
Concluding that as a general matter funds of the University of Oklahoma are public funds is only the first step in our analysis, however, because the provisions of Article X, Section 11 do not apply to all public funds. Rather, by their explicit terms, the prohibitions of Article X, Section 11 apply only to the receiving of interest, profits or perquisites "arising from the use or loan of public funds in [the officer's] hands, or monies tobe raised through [the officer's] agency."Id. (emphasis added). Accordingly, for the prohibitions of Article X, Section 11 to apply to the Governor's spouse's receipt of compensation for legal services paid by the University of Oklahoma, the funds must have been funds raised through the Governor's agency — the Governor's office — or funds in the Governor's hands.
 C. The Governor is an Officer to Whom Article X, Section 11's Prohibitions Apply.
It is beyond question that the Governor is an officer to whom Article X, Section 11 applies. As the Oklahoma Supreme Court held inOklahoma City v. Century Indemnity Co.,62 P.2d 94 (Okla. 1936), for a holder of a position to be a "public officer" three conditions must be met: (1) the "position must be created or authorized by law;" (2) "there must be certain definite duties imposed by law on the incumbent;" and (3) "the exercise of some portion of the sovereign power" must be involved.Id. at 97. The position of Governor is specifically provided for and listed in Article VI, Section 1 of the Oklahoma Constitution. Further, under Section 2 of Article VI, the "Supreme Executive Power shall be vested in a Chief Magistrate, who should be styled `The Governor'. . . ." Id. The Governor is also the Commander-in-Chief of the State militia (OKLA. CONST. art. VI, § 6), and the Governor has the power to convoke the Legislature into extraordinary session and determine the subject matter for such sessions. OKLA. CONST. art. VI, § 7. Additionally, the Governor is required by Article VI, Section 8 to "cause the laws of the State to be faithfully executed, and shall conduct . . . all intercourse and business of the State with other states and with the United States." Id. In sum, the position of Governor is created by law, and the duties the law imposes on the Governor involve portions of the sovereign power. The Governor is thus a public officer to whom Article X, Section 11's prohibitions apply. *Page 7 
 D. The Prohibitions of Article X, Section 11 Against an Officer Indirectly Receiving Prohibited Interests, Profits or Perquisites, Include Receipt of Such Prohibited Gain by the Officer's Spouse. Thus, the Prohibitions of Article X, Section 11 Apply to the Governor's Spouse.
The prohibitions of Article X, Section 11 are not only applicable to an officer's directly receiving any interest, profit or perquisites arising from the use or loan of public funds in his hand or monies to be raised through his agency, but are also applicable to indirect receipt of such gain. In this respect, the prohibitions of Article X, Section 11 are similar to those imposed upon members of the Legislature by Article V, Section 23, which in pertinent part provides:
 No member of the Legislature shall,. . . nor shall any member, during the term for which he shall have been elected, or within two years thereafter, be interested, directly or indirectly, in any contract with the State, or any county or other subdivision thereof, authorized by law passed during the term for which he shall have been elected.
Id. (emphasis added).
Over the years, Attorneys General have construed the provisions of Article V, Section 23 to apply to a spouse's interest in prohibited contracts, as the provision prohibits not only a directinterest, but also prohibits an indirect interest insuch contracts. These Opinions inform our analysis regarding Article X, Section 11's prohibitions against an officerindirectly receiving prohibited gains.
For example, in Attorney General Opinion 72-292, the Attorney General concluded that the wife of a member of the Legislature could not lease property to the State of Oklahoma. In doing so, the Attorney General relied heavily on an analysis of the Supreme Court of Missouri, as follows:
 A case analogous to the situation here, although involving a judge rather than a Legislator, was decided by the Supreme Court of the State of Missouri in the case of Githers v. Butler County, 165 S.W.2d 650 (1942) wherein the Supreme Court of the State of Missouri construed a statute similar to our constitutional provision. That portion of the statute applicable here stated:
 "No judge of any county court in the State shall directly or indirectly become a party to any contract to which the county is a party."
 In this case the wife of the county judge purchased two tracts of land from the county where the judge presided. At the trial of the case the judge's wife testified that she owned property in her own name and had money of her own and that the land was purchased with her separate money, on her own initiative and without consulting her *Page 8 
husband. Specifically, she testified: "My husband did not know I bought this land. I did not buy it for him or his agent."
 Despite this testimony the Court reversed the lower court and held the sale invalid. In so doing the Court said:
 "Though the husband may have no present interest in his wife's separate estate, there can be no question but that because of the relationship he does have such beneficial interest in her property and affairs as to be `indirectly' interested in the contract to which she is a party."
Id. at 330 (emphasis added).
Based on this analysis, Attorney General Opinion 72-292 went on to conclude that:
 It appears clear under the set of facts you have outlined for this opinion that an individual who is a member of the House of Representatives and whose wife is attempting to lease property to an agency of the State of Oklahoma would have an indirect interest sufficient to disqualify the wife's entry into such a contract as long as that individual remained a member of the Legislature of the State of Oklahoma.
Id. (emphasis added).
Nine years later in Attorney General Opinion 81-129, in which the provisions of both Article V, Section 23 and Article X, Section 11 were considered, the Attorney General concluded that acompany that was half-owned by the wife of a Legislator, couldnot lawfully contract with the State, stating: "It is correct to state, therefore, that for purposes of proscribed financial orcontractual dealings as discussed herein, the acts ofthe spouse of an Oklahoma legislator are, albeit indirectly, theacts of such legislator." Id. at 226 (emphasis added).
Under the analysis used in these Attorney General Opinions, when the prohibitions of Article X, Section 11 apply to the Governor, they also apply to her spouse. Thus, if the public funds of the University of Oklahoma are either funds in the hands ofthe Governor ox funds raised through the Governor's office, the Governor's spouse would be prohibited from entering into a contract under which his legal services could be paid from public funds of the University of Oklahoma. *Page 9 
 E. The Public Funds of the University of Oklahoma Are Neither Funds in the Governor's Hands, Nor Funds Raised Through the Governor's Office. Accordingly, As to the Governor and Her Spouse, the Prohibitions of Article X, Section 11 Do Not Apply to the Public Funds of the University of Oklahoma. Thus, the University of Oklahoma May Use Such Funds to Pay Attorney Fees to the Governor's Spouse.
Unlike the prohibitions of Article V, Section 23, imposed upon members of the Legislature, which prohibits members of the Legislature from having any direct or indirect interests in any contract authorized by law passed during the term for which they shall have been elected or within two years thereafter, the prohibitions of Article X, Section 11 imposed upon the Governor are not that broad. As we have seen, the prohibitions of Article X, Section 11 apply to the Governor as a public officer and apply to the Governor's spouse as well. As noted above, however, as to the Governor and her spouse, the prohibitions of Article X, Section 11 only apply to interests, profits or perquisites arising from the use of public funds in the Governor'shands, or monies to be raised through the Governor's office.
While it might be argued that the Governor's powers under Article VI, Section 12 to approve or veto appropriations are sufficient to bring any appropriations within Article X, Section 11's prohibitions, we must be mindful that we are dealing here with a penal law that must be strictly construed against enforcement. We need not, however, decide such a broad inquiry today because of the manner in which appropriations are made to universities and colleges in the Oklahoma System of Higher Education.
Article XIII-A, Section 1, the Oklahoma Constitution established The State System of Higher Education as follows:
 All institutions of higher education supported wholly or in part by direct legislative appropriations shall be integral parts of a unified system to be known as "The Oklahoma State System of Higher Education."
Id. (emphasis added).
As an institution of higher education supported by legislative appropriations, the University of Oklahoma is part of The Oklahoma State System of Higher Education. Article XIII-A, Section 1, and 70 O.S.Supp. 2010, § 3201[70-3201] (which includes the University of Oklahoma in the list of State educational institutions within the Oklahoma State System of Higher Education).
The Constitution prohibits the Legislature from appropriating monies to particular institutions in the Oklahoma State Higher Education System, such as the University of Oklahoma. Rather, under Article XIII-A, Section 3 of the Oklahoma Constitution, appropriations made to the Oklahoma State *Page 10 
System of Higher Education are made on a consolidated, lump-sum basis for all institutions in the State System of Higher Education — one lump-sum appropriation for all institutions within the system. Thereafter, it is the Board of Regents for Higher Education that allocate funds to each institution in the System:
 The appropriations made by the Legislature for all such institutions shall be made in consolidated form without reference to any particular institution and the Board of Regents herein created shall allocate to each institution according to its needs and functions.
Id. (emphasis added).
Article XIII-A, Section 2, establishes the Oklahoma State Regents for Higher Education, which is a coordinating board of control for all state institutions in the Oklahoma State System of Higher Education. As the coordinating board for the institutions within that system the board has been vested with specific powers, including the power to "prescribe standards of higher education applicable to each institution," "determine the functions and courses of study in each of the institutions to conform to the standards prescribed," "recommend to the State Legislature the budget allocations to each institution," and "have the power to recommend to the Legislature proposed fees for all of such institutions." Id. And, as discussed above, it is the Oklahoma State Regents for Higher Education that apportions monies from the Legislatures' lump-sum, consolidated appropriation to the various institutions within the Oklahoma State System of Higher Education.
Thus, even if the Governor's veto powers over appropriations could somehow generally be viewed as placing appropriated funds in the Governor's hands or being funds raised through her office, as we have seen, the Legislature makes no appropriations to the University of Oklahoma. Rather, it is the Oklahoma State Regents for Higher Education that determines how much money from the lump-sum fund is allocated to the University of Oklahoma.
While the Governor appoints the members of the Oklahoma State Regents for Higher Education, subject to confirmation by the Senate, those members serve for a set term of office and do notserve at the Governor's pleasure, as they are only removable for cause in the manner provided by law for removal of officers not subject to impeachment. OKLA. CONST. art. XIII-A, § 2. Being appointed for set terms and only being removable for cause in the manner provided by law for officers not subject to impeachment, members of the State Regents for Higher Education are independent officers not subject to control by the Governor. Accordingly, the fact that the Governor makes such appointments, does not mean that funds in the Regents' hands somehow constitute funds in the Governor's hands — particularly in light of the fact that we are dealing with a penal provision.
In light of the fact that the provisions of Article X, Section 11 are penal provisions that must be strictly construed and for the reasons discussed above, we conclude that the publicfunds of the University of Oklahoma are not — by virtue of the Governor's veto power or otherwise — public *Page 11 funds in the hands of the Governor, nor public funds raisedthrough the Governor's office.[2] We conclude, accordingly, that as to the Governor and her spouse, the prohibitions of Article X, Section 11 do not apply to the funds of the University of Oklahoma, because the prohibitions apply only to public funds in the official's hands or raised through the official's agency. Thus, the Governor's spouse may perform legal work for the University of Oklahoma and be compensated from the University of Oklahoma's funds, and such does not violate Article X, Section 11 of the Oklahoma Constitution.
 It is, therefore, the official Opinion of the Attorney General that:
 1. Under the prohibitions of Article X, Section 11 of the Oklahoma Constitution, officers of the State are prohibited from receiving, directly or indirectly, any interest, profit or perquisites, arising from the use or loan of public funds in their hands, or monies to be raised through their agencies for the State.
 2. Violations of these prohibitions in Article X, Section 11 are deemed felonies, the punishment for which includes disqualification to hold office. As Attorneys General in the past have concluded, Article X, Section 11 is therefore a penal law. For example, see Attorney General Opinions 2005-13, at 70, 72; 2004-40, at 264; and 2003-17, at 101, 104.
 3. As a penal law, Article X, Section 11 must be strictly construed, and, accordingly, not extended beyond the import of its language.
 4. The prohibitions of Article X, Section 11 apply only to public funds. Because both the Oklahoma Supreme Court and the Oklahoma Court of Criminal Appeals have held that the monies of CompSource Oklahoma are not public funds, the prohibitions of Article X, Section 11 do not apply to the monies of CompSource Oklahoma. Thus, the Section does not prohibit the Governor's spouse from being paid attorney fees from CompSource Oklahoma funds.
 5. Article X, Sections 11's prohibitions against an officer indirectly receiving prohibited interests, profits or perquisites include the receipt of such prohibited gain by an officer's spouse. Thus, because the prohibitions of Article X, Section 11 apply to the Governor, they apply also to her spouse. *Page 12 
 6. The prohibitions of Article X, Section 11 do not apply to all public funds. Rather, the prohibitions apply only to (1) the use or loan of public funds in an officer's hands, or (2) monies to be raised through the officer's agency. Thus, the application of the prohibitions of Article X, Section 11 to the Governor and her spouse attach only to public funds in the Governor's hands or raised through the Governor's office.
 7. Because the prohibitions of Article X, Section 11 apply only to public funds in an officer's hands or funds to be raised through the officer's agency, and because the public funds of the University of Oklahoma are neither in the Governor's hands nor raised through the Governor's office, Article X, Section 11's prohibitions do not prohibit the University of Oklahoma from using its public funds to pay attorney fees to the Governer's spouse.[3]
E. SCOTT PRUITT ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL
[1] See letter from Mary Fallin, Governor of Oklahoma, to Scott Pruitt, Attorney General of Oklahoma p. 1 (May 17, 2011) (on file with author).
[2] State agencies have various means of raising funds, such as fines, fees, contracts, donations and bonds. None of the public funds of the University of Oklahoma are raised by the Governor's office through any of these mechanisms or otherwise.
[3] The conclusions reached regarding Article X, Section 11 of the Oklahoma Constitution are equally applicable to like prohibitions contained in 21 O.S.Supp. 2010, § 341(a criminal statute prohibiting embezzlement by public officers).
 *Page 1